JUDGE PETERS
delivered the opinion of the court:
As to the exceptions to the depositions of Mrs. Henry and others, the record shows that on the 14th March, 1868, exceptions were filed to them, but it does not show that they were acted on by the court, and this court must presume that the exceptions were waived, as has been repeatedly ruled.
It should be observed, that it is stated in the bill of exceptions, that on the trial, the plaintiffs read to the jury the depositions of Mary Henry, taken August 31st, 1836; J. Barker, taken June 3d, 1866; W. Butler, October 17th, 1835, “to which depositions the defendant objects; but the court overruled the objections, and the defendants excepted.” Doubtless the name Barker, in the bill of exceptions, is so written by mistake for Jo. Burden, as the last name is attached to a deposition in the case, and the name of Barker is not found; besides, the date when the *656 deposition ■was taken is also, by mistake, stated in the bill of excejDtions to be “ 1866,” when it should be “1836,” as appears by the caption of the deposition.
Regarding the exceptions to the depositions as waived, the only objection which could arise would be as to the Competency of their evidence.
The depositions of two of said witnesses were taken for the purpose of, and do identify, S. Ford, one of the grantees under whom plaintiffs claim, establish his death, and prove his heirs; and that of the other to identify the land, he having been one of the chain-carriers when the original survey was made; the evidence was, therefore, pertinent and competent, and was properly admitted. '
The next alleged error which will be considered, is the admitting a copy of the deed'of Reed and wife to James Glentworth, one of the lessors of the plaintiff, as evidence. That deed bears date the 18th day of November, 1807, and was acknowledged before the mayor of the city of Philadelphia on the 20th day of the same month and year that it bears date, but was not produced for record in this State until the 16th of January, 1819, when it, together with the certificate of the mayor of the city of Philadelphia of the due acknowledgment thereof before him by the grantors, was admitted to record in the office of the clerk of this court.
The power of the mayor of the city of Philadelphia, where the grantors resided at the time, to take their acknowledgement, or the sufficiency of his certificate to authorize the recording of the instrument in this State, are not questioned; nor is the authority of the clerk of the Court of Appeals to admit the deed to record in his office denied; but it is contended on behalf of appellants that it was not lodged for record in the proper office, within the time prescribed by the statute of Ken *657 tucky in force at its date; and, consequently, a mere copy, certified by the clerk of this court, was erroneously admitted as evidence on the trial of the case in the court below; and that the tenth section of the act of 1881 (1 More. & Brown, 453) is in conflict with the Constitution of Kentucky.
That section reads as follows : “ That where deeds have been heretofore duly proven or acknowledged, or shall hereafter be so duly proven or acknowledged, but not recorded in the proper office within the time prescribed b} law, such deeds may, nevertheless, be recorded in the proper office, where they have not been recorded, and' from the time of recording be as effectual to all purposes as if recorded within the time prescribed by law; and where any such deed has been recorded, but not within the time prescribed by law, copies of the record of the deed shall and may be used as evidence in the same manner as if it had been recorded within proper time:
It is admitted that the Legislature, by said enactment, intended that copies of deed which had been previously recorded, but not within the time prescribed, should, nevertheless, be competent evidence. But the power of the Legislature is denied; and without referring to any particular article or section of the Constitution, counsel say : “ It will hardly be pretended that the Legislature can, by an act, directly take private property from one individual and confer it upon another,” &c., &c.
In answer to this argument in part, it may be remarked,' that recording of a deed, or the lodging it in the proper office for record, does not pass the legal title to the vendee ; the legal title passed by the execution and delivery of the deed by Reed and wife to Glentworth. It was effectual for that purpose, not only as to the parties *658 thereto, but as to all others, except creditors and subsequent purchasers, without notice. This doctrine is too familiar and too well settled to require any citation of authority. The act of 1831, supra, deprived Reed and wife of no right, and conferred none on their vendee. It only authorized a certified copy of their deed to be substituted as evidence, instead of requiring parties who needed the evidence to introduce and prove the execution of the original deed for that purpose.
By the act of 1785, eighteen months were allowed to offer the deeds of non-residents to the proper officer for record, after the acknowledgment thereof; and by the act of 1796, the time for offering such deeds for record, after the proper authentication of the acknowledgment thereof,.' was limited to eight months. By section 15, chapter 24 (1 ml. Rev. Stat., 280-1),- deeds, other than deeds of trust and mortgages, shall not be good against a purchaser for a valuable consideration, or any creditor, except from the time the same shall be legally acknowledged or proved, and lodged for record, unless the same shall be so lodged within eight months from the date thereof by a citizen of Kentucky; if not a citizen of Kentucky, but a citizen of the United States, then within twelve months; and if not a citizen of the United States, then eighteen months. And by section 23 of Revised Statutes (1 vol., 283), it is provided that deeds (except of married women) legally executed, but not recorded nor lodged for record in proper time, may be proved or acknowledged and recorded, and be as effectual from the time of so recording as if recorded in proper time, which is in effect and substantially a reenactment of the act of 1831. These statutes have not only legislative sanction, but have been acquiesced in by the country, the first for about twenty years, and the *659 last approaching that period; and while we are not aware of any case decided by this court in which the validity of either statute was direetly involved, in the case of Applegate vs. Gracy (9 Dana, 215), the 10th section of the act of 1831 was incidentally before the court and commented on, and no doubts were then expressed of its validity.
The principal object for requiring the registration of deeds, being for the protection of purchasers for value without notice, and of creditors, their rights were not prejudiced by the helping act of 1831, as construed heretofore by this court in the case supra; and as to all others, it only changes the rule of evidence, which the Legislature had the constitutional power to do; consequently, the copy of the deed was properly admitted.
The only remaining question to be considered, is as to the propriety of giving certain instructions asked for by appellees, and refusing some which appellants asked. Instructions numbered one, two, three, and six, given at the instance of appellees, present, in effect, the same principles of law applicable to the two parcels of land claimed respectively by appellants; and while they are not presented in as perspicuous language as is to be desired, still no valid or available objection to them can be perceived. They inform the jury, as proposition of law, that if they believe from the evidence that the persons therein named, while they were in possession of the land, not as tenants to any one, and owing no allegiance to any one as landlord, took leases under appellees’ title, and held under them, their possession from thenceforward was the possession of their landlords, and they would be estopped to deny their title. This doctrine has been repeatedly recognized by this court.
*660 The sixth instruction, as we understand it, informs the jury that if they believe from the evidence that those under whom appellants claim had been tenants of appellees, they must believe from the evidence that they had renounced their tenancy, and had given their landlords notice of such renunciation, and since then had been adversely and continuously possessed of the land for twenty years before the commencement of the suit; and thus understanding the instruction, it is in accordance with the. previous rulings of this court.
As a proposition of law, instruction No. 5 cannot be maintained. First Ford’s heirs, as appears from his will, took as purchasers, and not by descent; consequently, if the statute had commenced running in the lifetime of their ancestor, it continued to run against them. Moreover, their father and Reed held the title to the land jointly, and when they acquired title, neither Reed nor Glentworth, his subsequent vendee, labored under any disability; consequently, the operation of the statute-was not obstructed. It is only where all the plaintiffs are under disabilities that the running of the statute is prevented. (Smith & Co., vs. Carney et alios, 1 Littell, 296.)
This instruction being erroneous, the question arises, were appellants prejudiced by it?
This court decided in Neal vs. Robertson (5 J. J. Mar., 213), that the limitation of seven years does not begin to run until the tenant, relying on the statute law, has acquired a title, legal or equitable, deducible from the Commonwealth.
Appellants do not connect themselves by any documentary evidence of title whatever with the patent to James Pierce for one hundred and ten and three quarter acres, dated 29th of December, 1826, which they ex-' *661 Iiibited; and as to the patent to William S. Patterson and Jeremiah S. Pierce, that issued in December, 1832, 'less than two years before the action was commenced. The statute was, therefore, wholly unavailing to appellants, as they had failed to connect themselves with any documentary title a sufficient length of time before the action was commenced, and they were not prejudiced by the instruction.
Instruction E, asked by appellants, was properly refused; it was calculated to mislead and confuse the jury. As was said by this court in Griffith vs. Dickens, (2 B. Mon., 20), the jury undoubtedly have a right in ejectment, as in other cases, to weigh probabilities and solve doubts as to matters of fact; but if, in their opinion, the preponderance of proof, or of rational inference •as to any fact on which the title depends, be not on the side of the plaintiffs, they ought not to find for them; and to this extent, and no further, ought the proposition to go.
Instruction L relates to the rejection of the deed from Reed to Glentworth, and, for the reasons already stated, it W'as properly refused.
As to instruction M, it assumes that there had been an adversary holding against Reed, &c., for more than twenty years, and then proposes to submit .an inquiry into a fact about which there was no evidence; consequently, it should not have been given.
There was no evidence conducing to show that there were any other persons in Philadelphia of the same Christian and surnames of the patentees, and the instruction K was, therefore, properly refused.
Perceiving no error prejudicial to appellants, the judgment must be affirmed.