## Hayden's Committee v. Cash.

(Decided January 22, 1914.)

### Appeal from Graves Circuit Court.

1. Appeal—Question of Fact—Equitable Actions.—In an action to set aside a deed executed by one alleged to have been of unsound mind at the time thereof, where the evidence is such that the mind of this court is left in doubt, the finding of the chancellor will not be disturbed.

2. Deeds—Validity—Capacity to Execute.—In an action to set aside a deed for grantor's alleged want of capacity to execute same, where the evidence is conflicting and the mind of the court is left in doubt, the finding of the chancellor will not be disturbed.

3.  Witnesses—Weight of Testimony.—In an action to set aside a
    deed for want of mental capacity upon the part of a grantor, the
    testimony of witnesses as to mental capacity of the grantor at
    the time of the execution of the deed nearly fifteen years ago, is
    apt to be colored by subsequent conditions; and what was then
    a mere suspicion of unsoundness of mind may have been fortified
    and enlarged into a confirmed belief, because of after develop-
    ments in respect of the mental capacity of the grantor.

HESTER & HESTER for appellant.

SPEIGHT & DEAN for appellee.

Opinion of the Court by Judge Hannah—Affirming.

On November 6, 1912, G. B. Hayden, Committee for
N. Almyra Hayden, instituted an action in the Graves
Circuit Court, seeking the annulment of a deed executed
by N. Almyra Hayden to R. L. Cash, on January 7, 1898,
on the ground that at the time of the execution of said
conveyance, said N. Almyra Hayden was, as alleged, of
unsound mind and without sufficient mental capacity to
make said conveyance; and also on the ground of fraud
and collusion of defendant and said Almyra Hayden's
then husband in inducing the execution thereof. The
chancellor upon the trial dismissed the petition, and plain-
tiff appeals.

It appears from the evidence that N. Almyra Hayden
first married George Hayden; that they lived on the land
in controversy a number of years. By him she had
several children. After his death in December, 1894, she
qualified as statutory guardian for said children, there
being some money belonging to them. On January 7,
1898, she settled this trust, turning same over to the
Graves County Banking & Trust Company, and on the
same day executed the deed herein sought to be avoided.
She had re-married within about a year after the death
of her first husband, her second husband being Sylvester
Hayden. He assisted her in making the sale of their land,
and joined with her in the conveyance thereof; and they
then moved to Arkansas. After living there a year or
two they returned to Kentucky, and thereafter Sylvester
Hayden obtained a divorce from her. On November 8,
1912, N. Almyra Hayden upon inquest in the Graves
County Court was found to be of unsound mind; and the
plaintiff, her son, was appointed her committee, evidently
for the purpose of instituting this action.

While there is some proof in the record that Almyra Hayden was a woman of ordinary intelligence, the weight of the evidence is to the effect that her mind was always rather weak; that she was, as one of plaintiff's witnesses expressed it, "a sort of a crank; was one of those harum-scarum critters that I did not know how to take her." At times she was hysterical, and at times acted very irrationally. Yet, the evidence shows that she lived with her first husband some ten or twelve years, bearing him five children, attending to her household duties, caring for her children, purchasing clothing, provisions and other household articles at the neighborhood stores, and during a part of the time waiting on customers in her husband's store; in fact, discharging her duties to her family and the community in the ordinary way during this time; that she acted as guardian for her children after the death of her first husband, up to the time when she sold the land in controversy and moved from the State. That she had sufficient mind to conduct her household affairs, supply the needs of her family, and was "sharp" at bargaining for the clothing, provisions and other necessary articles for her family, and demeaned herself in the relation of wife and neighbor, as an ordinary woman in the usual way, there can be no doubt; yet, as to whether she had in 1898 when the deed was executed, sufficient mental capacity to know and understand the nature, meaning and effect of her act in that respect, the evidence is sharply conflicting. The whole case simply turns on a question of credibility of the witnesses, weight of testimony, and the circumstances connected with the case. The chancellor was doubtless in better position than this court to judge of these matters.

Some weight should be given to the fact that although Almyra Hayden returned to Kentucky only a year or two after the execution of the deed herein sought to be annulled, this action was not instituted until nearly fifteen years after the conveyance was made. Her son, the plaintiff, was twenty-eight years old when this suit was filed, and has a sister older than he is. The fact that the then husband of Almyra Hayden was present and assisted in making the contract of sale, with no evidence to support a suspicion that he was in any way trying to aid defendant in cheating her was also doubtless considered by the chancellor. It may also be said as a general rule that the memory of witnesses testifying concerning the mental

condition of one, who has long since the time testified about become of unsound mind beyond a doubt, is almost universally affected by the fact of the present condition in that respect; that which, at the time testified about may have been only a mere suspicion, is by subsequent developments fortified and enlarged into a confirmed belief.

Upon a consideration of the whole record, the mind is left in doubt; the finding of the chancellor is not so opposed to the weight of the evidence as would justify our setting it aside; and the judgment, therefore, is affirmed.