## Hatfield's Administrator v. Hatfield.

(Decided November 17, 1915.)

### Appeal from McLean Circuit Court.

1. Bills and Notes—Checks—Payment of Money by, Raises no Presumption of Loan.—The mere payment of money by check does not authorize the presumption that the amount received thereon by the payee was a loan from the drawer of the check.

2. Depositions—Exceptions to—When Treated as Waived.—When exceptions filed to the depositions of witnesses are not passed on in the circuit court, or, if passed on, no exception was taken to the ruling of that court, upon appeal, the Court of Appeals will regard such exceptions as having been waived and treat the case as if no question had been made as to the competency of the witness or witnesses, or as to the admissibility of his or their testimony.

L. P. TANNER for appellant.

RICHARD ALEXANDER and LITTLE & SLACK for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Affirming.

Thomas Hatfield died, intestate, in the month of March, 1913, domiciled in McLean County. Thereafter the appellant, John E. Cowgell, was appointed and duly qualified as the administrator of his estate. Following his appointment as such administrator, he found among other notes and papers that had been left by the decedent, a note which had been executed by his grandson, the appellee, W. R. Hatfield, December 23, 1910, to one E. W. Tucker, upon the back of which the name of the payee was written, but above which there were no words indicating a sale or assignment of the note. Subsequently

the administrator brought this action upon the note seeking its recovery of the appellee, alleging that after its execution to Tucker by the latter, Tucker sold and assigned it to the decedent, whereby he became the owner thereof; and further, that the note was due and wholly unpaid. It was also alleged in the petition that the note was executed by appellee to E. W. Tucker in part payment for a seventy-five-acre tract of land in McLean County, which the latter by deed of date of December 23, 1910, conveyed to him; and that the deed retained a lien upon the land to secure the payment of the note. By the prayer of the petition judgment was asked for the amount of the note, with six per cent. interest from January 4, 1911, and for the enforcement of the lien by a sale of the land, or enough thereof to pay same.

Appellee's answer denied that the note had been sold or assigned the decedent by Tucker, also denied the decedent's former ownership thereof, and pleaded its payment by appellee to Tucker.

The appellant then filed an amended petition in which it was, in substance, alleged that the decedent, while sick and infirm, had furnished appellee the money with which to pay the note, by giving him a check for the amount thereof, under an agreement with him that Tucker would endorse or assign the note to the decedent; which, it was alleged, had been done, and by the prayer of the amended petition a recovery was sought against appellee upon the check, if not to be had on the note, with six per cent interest, from January 4, 1911, and for the enforcement of a lien upon the land for its payment.

By his answer to the amended petition appellee traversed its averments and alleged that the check of $1,000.00 he had received from the decedent and applied to the discharge of the note in question, was a payment for the delivery to the decedent of the possession of a farm he had leased of him, and for improvements appellee had made thereon, which farm, as further alleged, he had leased from the decedent for a term of three years, but the possession of which at the expiration of the first year thereof, he had, at the decedent's request and upon his promise to pay him therefor the $1,000.00 mentioned, redelivered to him.

The affirmative matter in the two answers was controverted of record, and following the taking of proof by depositions and submission of the case, the circuit

court rendered judgment dismissing the appellant's petition and allowing appellee his costs. From that judgment the former has appealed.

The following facts appearing in the record are undisputed: E. W. Tucker conveyed to the appellee, W. R. Hatfield, by deed of December 23, 1910, a seventy-five-acre tract of land in McLean County, the consideration being $1,800.00, of which $260.00 was paid in cash, and notes were executed by appellee to Tucker for the remainder, of even date and payable as follows: $1,000.00 January 4, 1911; $190.00 January 20, 1911, and $350.00 January 10, 1912, these notes being secured by a lien retained by the deed on the land. The payment to Tucker of the several notes mentioned and the release of the lien retained as security for their payment is shown by the following entry appearing on the margin of the deed as recorded in the office of the clerk of the McLean County Court:

"The notes described in this deed have been paid in full; the lien on property is hereby released. This 12th day of February, 1912.
(Signed)                              "E. W. TUCKER.
Attest—"John R. Priest, Clerk,
          "By John E. Cary, D. C."

The only evidence introduced by the appellant was furnished by the depositions of himself, E. W. Tucker and C. W. Thomasson. Appellant merely testified that the note had been found by him in the Bank of Livermore among certain other papers of the decedent, and that he had no knowledge as to the latter's ownership of it other than the presumption arising from its being among his papers. C. W. Thomasson, cashier of the Bank of Livermore, testified that the check of the decedent for $1,000.00, of date January 1, 1911, payable to appellee, was brought by the latter to the bank, there endorsed by him and the proceeds deposited to his credit January 5, 1911; that appellee then drew his check on the bank for $1,000.00, payable to E. W. Tucker, which he gave to Thomasson with the direction that he deliver it to Tucker when the latter presented the note, which he (Thomasson) did later on the same day and received from Tucker the note; and that following the delivery of the check to Tucker the same was charged to appellee's account. Thomasson further testified that during the last few years of his life the decedent had left notes and other

valuable papers in the bank for safe keeping, but that he had no recollection of delivering the $1,000.00 note to decedent after its payment by appellee, or of any direction from the decedent to place it among his papers; nor did either appellee or Tucker direct him to place it among the papers of the decedent. In this connection it is proper, however, to call attention to the following question asked Thomasson, and his answer thereto :

"Q. State whether or not, if the said E. W. Tucker left said note at said time, you would have placed same with the papers of Thomasson, unless you had been ordered to do so by the parties interested at that time."

"A. I certainly would not."

The incompetency of the question and answer is patent, the one calling for the witness' belief as to the probability of his action on the state of case suggested, and the other amounting to a mere expression of the witness' opinion as to what he might have done under such circumstances. But as the record does not disclose that the question or answer was objected to by appellee, it must be allowed to stand, for what it is worth, as a part of the appellant's evidence.

Tucker testified that both the decedent and appellee had informed him that the former would furnish the latter $1,000.00 to pay on the land sold appellee by Tucker, but that neither of them had advised him whether the money would be furnished by the decedent as a loan, gift or payment, and that he had not been requested by either of them to assign the note to the decedent for any purpose; that all he did was to take the note to the bank January 5th for payment, and that when he got to the bank the cashier delivered to him the individual check of appellee, which had been left there by him, and upon its receipt he endorsed the note in blank and left it with Thomasson.

It will be observed that the only thing appearing in the evidence referred to as conducing to show the decedent's ownership of the note is the presumption arising from the fact that it was found after his death among his papers. The evidence wholly fails to show how or when it got among his papers, for what purpose it was placed there, or even that its presence among his papers was ever known to him. Although the decedent lived more than two years after the payment of the note by appellee, it does not appear that he mentioned the note to

anyone during that time or that he claimed to be the owner of it. He also lived more than a year after the release of the lien made upon the deed book in the clerk's office by Tucker, which release contained an acknowledgment of the payment of all the notes appellee had given for the land conveyed him by Tucker, yet with the implied notice of such release, no complaint was made by the decedent that the release of the lien as to the $1,000.00 note was unauthorized.

The most that can be claimed for appellant's evidence is that it only inferentially shows the decedent's possession of the note at the time of his death. It is, however, contended by appellant that if not entitled to recover upon the note, he is entitled to recover upon the check. This contention rests upon the theory that the presumption should be indulged that the amount of the check was a loan and that this presumption casts upon appellee the burden to show its consideration. The contention is manifestly unsound, for ordinarily, in the absence of proof to the contrary, the presumption will be indulged that a paid check was executed in satisfaction of a debt of the payor, and in this case the evidence of appellant falls short of destroying that presumption.

It now becomes necessary to consider the evidence introduced in behalf of the appellee. It appears from appellee's own testimony that the check in question was given for a valuable consideration; that he had rented from the decedent for a term of three years a farm owned by the latter, upon which he had at his own expense built new fences, made repairs upon the buildings and, by the sowing of timothy, otherwise improved the land; that at the end of the first year of his tenancy the decedent conceived the idea of selling the farm, in order to do which it was necessary for him to cancel the remaining two years of the lease, which could not be done without the appellee's consent, and that in order to regain the possession of the farm at the end of the first year of the lease and to pay appellee for the improvements he had put upon the place, the decedent agreed to pay him the sum of $1,000.00, which sum was, in fact, paid appellee in the check that the latter applied to the discharge of the note of $1,000.00 executed to Tucker on the land Tucker conveyed him.

Appellee further testified that the $1,000.00 thus paid Tucker fully discharged the note due January 5, 1911;

that it was not placed with other papers of the decedent with his knowledge or consent, and that he did not himself get possession of the note when it was paid by him because Thomasson, the cashier of the bank, did not then have it, and while he was unable to recall that he made of Thomasson any request to deliver to him the note the latter received from Tucker, he was, nevertheless, entitled to its possession after its payment and expected that it would be delivered to him.

C. H. Salmon, introduced in appellee's behalf, testified that he knew appellee had leased of the decedent, his grandfather, a farm for the term of three years, that about the date of the expiration of the first year of the lease and after the sale by decedent of the farm, the decedent told him that he had sold or would sell the farm, and when asked by the witness what he was going to do with Riley (appellee) he said he had paid Riley and paid him well to give possession so he could sell it; and, further, that he had raised Riley and wanted to help him some way, so he paid him well to get possession that he might sell the farm, as he was getting old and wanted to get things shaped up.

A. C. Smith testified that in a conversation he had with the decedent in the latter part of 1910, just before the latter sold his farm, the decedent said he was going to sell the farm but that he would have to pay Riley something to move off as he had agreed to fix the farm up for him and had rented it to him for three or four years. This witness also testified, as did Salmon, that the decedent was then in good health for a man of his age and capable of transacting his own business; and further, that appellee waited upon and took care of his grandfather during his last illness, which occurred more than a year after the conversation referred to.

J. R. Cox testified that his farm joined that of the decedent in 1910. To him just before the farm was sold the decedent said: "Riley had gone there and fixed up the place and has sowed grass and talked as if he was going to stay there a number of years; he said that Riley always treated him all right and had never given him any trouble, and he said that he wasn't going to lose anything by it.  *  *  *  He just said that Riley was going to give him possession and he was going to pay him well for it.  He said that Riley wanted a farm and he was going to help him pay for it."

From what has been said of the testimony of Smith and Cox, it appears that shortly before he sold his farm, the decedent told them of his intention to sell it and to pay appellee well for the possession, and that he intended to help appellee in his purchase of another farm, and it appears from the testimony of Salmon that the decedent said to him shortly after the sale of the farm, that he had paid appellee well for possession in order to effect his (the decedent's) sale of his farm, and that he intended to help appellee. While none of the witnesses last named were told by the decedent that he intended to pay or had paid appellee a thousand dollars to obtain a cancellation of two years of the lease the latter had upon his farm, it is evident from their testimony that he intended to pay him well, in view of which it is not unreasonable that the payment he made appellee amounted to a thousand dollars; and as the check for the thousand dollars was furnished appellee by the decedent and no other payment was known to have been made him by the latter, it is fairly apparent that in giving him the check the proceeds of which were paid to Tucker on the note due January 5, 1911, the decedent carried out his agreement to compensate him for the surrender of two years of his lease on the farm.

If we were to give to appellant's evidence all the force and effect claimed for it by his counsel the testimony of appellee and the corroboration of it furnished by the witnesses, Salmon, Smith and Cox, must be held to outweigh it and authorize the judgment of the chancellor. It is, however, insisted for appellant that as appellee was incompetent as a witness, his testimony must be wholly disregarded on the present appeal. This contention cannot be sustained because it was admitted by appellant's waiver of any objection thereto. It appears that he filed exceptions to all of the depositions taken and filed by appellee, but the record fails to show that the exceptions were passed on by the circuit court or that it was asked to do so.

Section 589, Civil Code, provides:

"Errors of the court, in its decisions upon exceptions to depositions, are waived unless excepted to."

In Lewis v. Wright, 3 Bush, 311, we held that exceptions to depositions as incompetent evidence, which do not appear to have been acted on by the court below, will be regarded by this court as waived. In the opinion it is said:

"Much of the testimony of Wright was directed to the issue formed by the affidavits of himself and Redmon, controverting the ground of Lewis' attachments, and exceptions were filed by Lewis to this deposition as incompetent evidence; but they do not appear to have been acted on by the court below and must, therefore, be regarded in this court as having been waived."

In Corn, etc. v. Sims, etc., 3 Met., 398, we said:

"The exceptions to the deposition of Sims were not acted on by the court below, and therefore no question as to the competency of the witness, or the admissibility of his testimony, is presented. Even if the court had erroneously decided upon the exceptions, such error, unless excepted to at the time, is waived, and furnishes no ground of reversal here. (Civil Code, sec. 653—now sec. 589). We need not refer to the numerous recent decisions which settle this point conclusively." Patterson v. Hensel, 4 Bush, 654; L. & N. R. Co. v. Graves, 78 Ky., 74; L. & N. R. Co. v. Montgomery, 17 R., 807; Bronston v. Bronston, 141 Ky., 639.

It is manifest from the authorities, *supra,* that appellant cannot now complain of the admission of appellee's testimony in the court below.

Judgment affirmed.