## Johnston, et al. v. Williams, et al.

## Braswell, et al. v. Williams, et al.

(Decided April 27, 1920.)

## Appeals from Allen Circuit Court.

1. Appeal and Error—Finding of Chancellor.—In an equity cause this court will examine the evidence for itself and determine the truth of the matter in issue, but if the evidence as to the facts is so contradictory that upon a consideration of it the mind is left in doubt as to the truth, weight will be given to the opinion of the chancellor upon an issue as to the facts and his judgment will not be disturbed.

2. New Trial—Newly Discovered Evidence.—When a new trial is sought upon the ground of evidence having been discovered since the trial, it must be shown that the evidence is material and is such as to be calculated to exercise a decisive influence in favor of the party offering it upon another trial.

JOHN H. GILLIAM, FRANK GOAD and GILLIAM & GILLIAM for appellants.

SIMS, RODES & SIMS and JOHN B. RODES for appellees.

Opinion of the Court by Judge Hurt—Affirming in both cases.

These actions are between the same parties and have been heard and decided together. The first above stated action was instituted by the appellees, James B. Williams and his wife, P. A. Williams, against the appellants, R. C. Huntsman, Harry Meredith, J. R. Johnston and A. G. Braswell, and in which the appellees sought to have declared void, an oil and gas lease which the appellants, or some of them, claimed to hold upon the lands of Williams, and to remove the cloud put upon the title to his land by reason of the existence and the claim of ownership to the lease by the appellants. Previous to the institution of this action on May 18, 1918, Williams had brought an action against J. R. Johnston and Harry Meredith, seeking relief touching the alleged lease upon his lands, as Johnston and Meredith were then claiming to hold a lease upon Williams' lands as assignees of R. C. Huntsman. In that action Williams asserted that he had executed a lease to R. C. Huntsman, which bore the date of March 13, 1916, and that the same had since been assigned to Johnston and Meredith, and that Huntsman had procured his execution of the lease by fraudulently representing to him, and pretendedly reading the lease to that effect, that the terms of the lease required the lessee to sink a well for oil or gas upon the lands within twelve months from the date of its execution, or in default of drilling a well, to pay to the lessor a rental of twenty-five cents (25c) per acre before the expiration of the year following the execution of the lease, and upon the failure of the lessee to either sink a well or to pay the rental, within the year, the rights of the lessee under the lease terminated, but, that the lease in fact did not contain the terms above stated, but provided that the lease might be kept in force by the lessee by the payment of a rental for each year for five years following the termination of the first year, and at any time during said years. In the latter part of September, 1918, and while that action was yet undetermined, Williams was informed by Braswell, that he had become the owner of the lease and exhibited a lease to Williams, which he represented was the lease, which Williams had executed upon his lands to Huntsman. Braswell read a portion of the lease, which he exhibited to Williams, to him, and Williams claims that it was unlike the lease which he had

given to Huntsman, and that it was also subscribed with his name and that of his wife's, with purple ink, and that the signatures thereto were not in their handwritings. On February 1st, 1919, Williams dismissed that action without prejudice to his right, to bring a future action, and on March 13, following, he and his wife instituted the first above styled case, averring that the appellants were claiming to hold a lease upon his lands for oil and gas purposes, but that the lease, under which they were asserting title was not the act nor deed of either himself or his wife, and further averring, that, if the appellants held a lease which had been 'executed by him, its execution had been procured by fraud, as averred in his first suit, and prayed for a judgment declaring the lease to be void. The appellants answered denying the averments of the petition and affirmatively alleging that Johnston and Braswell were the owners of the lease by assignment from Meredith, who was an assignee of Huntsman, and that the lease had been duly executed by Williams and his wife, and was then in full force and effect from their compliance with its terms, in offering to pay the rental provided in it, which Williams had refused to receive. Johnston and Braswell also, claimed to be in good faith purchasers of the lease for value, and without notice of any fraud or infirmity arising from its execution. The original of the lease, under which Johnston and Braswell were claiming, was not exhibited in the first action brought by Williams and his wife, though that action was pending for nearly a year before its dismissal, nor was it produced or put in the record in the first styled action, the appellants claiming that it was lost or mislaid, but a copy of the lease from the record of it in the office of the county court clerk was exhibited from which it appeared to have been recorded on the 27th day of January, 1917, and bore a certificate of acknowledgment by Williams and his wife, as having been made on the 8th day of January, 1917, before L. P. Huntsman, a deputy of the county court clerk. This purported copy of the lease did not contain the stipulations which Williams and his wife claimed that R. C. Huntsman represented to them, that the one executed by Williams contained, touching the drilling of a well and the payment of the rental, but only required the lessee to pay the rental for each year succeeding the first after its execution in order to keep the lease in force. Williams is an

illiterate man and unable to read and unable to write anything except his own signature. It is very satisfactorily proven that Huntsman made the representations which the lessors claimed that he did as to the conditions which the lease contained, and that Williams was induced to sign the lease which he did execute, upon the faith of those representations, but it is not clear that the assignees of Huntsman had any knowledge of the fraud perpetrated upon Williams, when they purchased the assignment of the lease, but Braswell procured his interest in the lease while the first suit, brought by Williams, was pending, and Johnston knew that Williams was claiming that the lease had expired when he became the purchaser of a portion of his interest. The claim of Williams, however, is that, the lease which Huntsman assigned to Meredith, and under which Johnston and Meredith now claim and assert their interests in his lands, and the one which was recorded was never executed by him, nor by his wife, and if not, their right to escape liability upon it is not affected by the fact that the assignees of Huntsman were innocent purchasers, as they claimed to be. The lease which Williams admits executing was, as claimed by them, never either signed or acknowledged by his wife and as he claims was subscribed by him with a lead pencil and the terms and conditions contained in it, were not the same as those embraced in the lease under which appellants claim title, or else that Huntsman fraudulently represented that it did contain such conditions, and induced him thereby to subcribe the lease; while the lease under which the appellants asserted title, in the first styled case, appeared to have been executed and acknowledged by both Williams and his wife, and their names appeared to have been subscribed thereto with ink, and in addition to the signature of Williams, a deputy clerk, before whom the appellants claimed that it was acknowledged, deposed that the names of Williams and his wife were written in ink, and that Williams, also, signed the paper, in his presence, by mark, while Williams asserts that the names of himself and his wife were subscribed to the lease, which Braswell exhibited to him, with ink. The chancellor was of the opinion and so decided that the lease, under which the appellants are asserting title, was never executed by Williams nor his wife and adjudged it void, and this court is asked to reverse that

judgment. Before reciting the facts testified to by the witnesses, it is necessary to say that while objections were made before the examiner as to the testimony of certain witnesses and certain portions of the testimony of others, the attention of the trial court was never called to these exceptions and it was not requested to, nor did it pass upon the exceptions and the objections, and the objections to the evidence will now have to be considered as having been waived, if in reality the objections were founded on any merit. Hatfield's Admr. v. Hatfield, 166 Ky. 761; Lewis v. Wright, 3 Bush 311; Bronston v. Bronston, 141 Ky. 639; Patterson v. Hensel, 4 Bush 654; Fears v. United Loan & Deposit Bank, 172 Ky. 256; Williamson v. Justice, 174 Ky. 327.

Mrs. Williams in her evidence deposed, emphatically, that she never at any time executed a lease to Huntsman, or acknowledged any such lease, though she testifies that at her home Huntsman sought a lease from her and her husband, which they declined to give, and in this she is corroborated by her husband and other members of her family, who testify that she neither subscribed nor acknowledged a lease at the time Huntsman claims that she did. Huntsman, who was engaged in securing leases and selling them to other parties, testified that he was at the home of the Williams, who lived ten miles from Scottsville, the home of Huntsman, and while there Mrs. Williams subscribed and acknowledged a lease to him upon her husband's land, although the husband, who was present, was refusing to agree to the lease, and that she subscribed her name with pen and ink in his presence, and he left the lease with Williams and returning in a day or two, Williams presented the lease to him and it was then subscribed with Williams' name, who also at that time acknowledged it. Huntsman was a notary public and executed a certificate of the acknowledgments upon the lease. He further deposed that Meredith objected to the lease executed by Williams and his wife, as well as other leases which Huntsman held, because, they were acknowledged before Huntsman as a notary public, and who was, also, the lessee, and that he had information that L. P. Huntsman was secured to retake the acknowledgments, but disclaimed any knowledge of L. P. Huntsman ever having done so; that he was sick while the re-acknowledgments were supposed to have been taken by L. P. Huntsman, although the certificate

made by L. P. Huntsman bears the date of January 8th, 1917, and R. C. Huntsman sold and assigned the lease to Meredith in the state of West Virginia, on January 10, 1917. Williams deposed, that, at his residence, Huntsman endeavored to procure him to execute a lease to him, but that he refused to do so, but that Huntsman did not leave the lease with him, and his wife did not sign or acknowledge it, nor did Huntsman return to his residence in a day or two nor at any other time, nor did he deliver the lease to him with his name subscribed thereto, nor acknowledge it then nor at any other time, nor did he procure any other person to do so for him; that shortly thereafter he was at the store of Huntsman, in Scottsville, when Huntsman again requested him to execute a lease to him and upon the representations of Huntsman as to what the terms of the lease were, he subscribed his name with a pencil to a blank form of a lease and delivered it to Huntsman. The form he subscribed was one which Huntsman had furnished to him upon which to procure another to execute a lease to Huntsman; that, when according to the terms of the lease as Huntsman had represented to him the rental of the land became due, he repeatedly requested Huntsman to either pay the rental or give up the lease, when Huntsman said he had sold the lease, but Williams could not find out from him to whom he had transferred it, as Huntsman represented that he did not know, or had forgotten who held the lease, but that Huntsman admitted that if a well had not been bored, nor the rental paid, the lease had then expired. In the latter statement, Williams was corroborated by a witness, who was present at one of the interviews between him and Huntsman. L. P. Huntsman whose certificate as a deputy clerk was attached to the lease, a copy of which was on file, and the one under which the appellants were claiming, deposed that Huntsman and Williams were together and requested him to take the acknowledgment of Williams to the lease, upon which he afterwards placed his certificate, and going into Huntsman's store, with them he saw the lease lying upon a table with the names of Williams and his wife subscribed to it with ink, and then that Williams, also, subscribed in his presence by mark; that Huntsman said to him that the lease had been subscribed by Williams and his wife with a pencil, but that he wanted it done with ink; that, then in the presence of Williams and Huntsman, he called Mrs.

Williams over the telephone and inquired, if the paper was all right, and that she answered that if it was the one which her husband had signed it was all right; that Williams had a previous conversation at that time over the telephone with his wife; and that he, L. P. Huntsman, then put a certificate of their acknowledgment upon it. Williams deposed that the statements made by L. P. Huntsman were altogether untrue, that no fact or circumstance mentioned by him ever occurred and that at the time it appears from the certificate that he acknowledged the lease that he was not so much as acquainted with or had ever seen L. P. Huntsman, and in the above statements Williams is corroborated by the lessee, R. C. Huntsman, who deposes that no part of the statement of L. P. Huntsman was true, or ever occurred. Mrs. Williams deposed that upon an occasion some one, whom she did not know, spoke to her over the telephone and inquired if a paper was all right and she inquired what paper, and received an answer that it was the one which Williams had signed, and she replied that she reckoned it would be all right, if he signed. Her husband was not then at Scottsville, but was at their home and that she did not sign or acknowledge, nor was requested to sign any paper. Williams furthermore deposed that in the latter part of September, 1918, when Braswell showed him the lease, which the appellants were claiming under, and read a portion of it to him that it did not "read like" the one which he signed with a pencil, and that both his and his wife's names appeared to be subscribed to it with ink, and that he at once protested to Braswell that he never executed it, and that the signature thereto was not his, but was in a much better handwriting than his, and requested Braswell to take the lease to a nearby bank and that the persons at the bank would tell him that it was not his signature. He, furthermore, deposed that at that time, he had given an option to one Kenney for a lease upon the land, and that Braswell said to him that he had purchased the interests of the other parties, and to call the transaction a trade, and if Kenney was not able to secure the money to purchase the lease that he, Braswell, would do so, and that he would then send for Williams, if he needed him, and "help him pull the wool over the eyes of these fellows." Braswell in his deposition in the first styled action does not deny any of these statements, nor does he deny that the lease

which he exhibited to Williams was signed in ink. Braswell does testify that he thereafter compared the lease which he had with a blank form of the lease which Williams had and that the terms of them were the same; that he only owned a 1/6 interest in the lease and that he thought Oliver & Dixon owned 1/6; that he did not know what had become of the lease; that it was lost while the first suit brought by Williams was pending, because at that time he made a search for it. It was further shown that a bundle containing leases in which the other appellants were interested with Braswell, was in Braswell's office in the bundle which had contained the Williams lease, as well as the others, when Braswell became a part owner in them and the Williams lease only was missing. The name of Mrs. Williams, whose Christian name is Ada, and who can read and write, was spelled, as signed to the copy of the lease on file, "Ader." Another lease, which had been executed to Huntsman, at about the time, the Williams lease bore date the acknowledgment to which was certified by Huntsman to have been made before him, and which in addition bore a certificate of acknowledgment made by L. P. Huntsman upon the same date as his certificate upon the Williams lease bears date, was put in the evidence by appellants, and the lessor was then called and testified, that he never made any acknowledgment before L. P. Huntsman, and had never seen him. R. C. Huntsman claimed that he had given a copy of the lease, which Williams had executed to him, to Williams, but this appears to have been a blank form of a lease which he had given to Williams for the purpose of having Williams secure some other person to execute it. A copy of the lease claimed by appellants contained the same terms as the form held by Williams, but it seems that Williams believed that the blank form held by him contained the terms of the lease executed by him, as such terms were represented to be by Huntsman. Williams is strongly corroborated in his statement as to what Huntsman represented the terms of the lease which Williams executed to be, and Huntsman does not directly deny that he made such representations.

It thus appears that the issue in this case is purely one of fact, the matter for decision is, "Is the lease, under which the appellants assert title, the act or deed of the appellees?" The chancellor was of the opinion,

from the evidence, that it was not. Of course, if they did not execute the lease, no one can have any rights under it. If a claim was made under the lease which Williams executed, although he may have been fraudulently procured to do so, a different question might be presented.

It is not necessary to comment upon the facts in evidence. They speak for themselves. That Williams executed a lease to Huntsman, there is no doubt, but, upon the issue, as to whether the one which was recorded, and under which the appellants are asserting claim, is the act or deed of Williams or his wife, the evidence is extremely contradictory, and leaves the mind in doubt, as to the truth. In an equity cause, the court will examine the evidence and determine the facts for itself, but, where the chancellor has determined a question of fact and the evidence is contradictory and when all is considered, the mind is in doubt as to the truth, a certain degree of weight is given to the decision of the chancellor upon a question of fact, and his judgment upon the facts will not be disturbed. Haydon's Committee v. Cash, 157 Ky. 55; Stephens v. May, 158 Ky. 126; Hazle v. Hazle, 155 Ky. 232; Bond v. Bond, 150 Ky. 389; Byasse v. Evans, 143 Ky. 415; Ahrns v. Ahrns, 160 Ky. 345; Harris v. McReynolds, 155 Ky. 450; Carpenter v. Carpenter, 158 Ky. 171; Gusler v. Hays, 154 Ky. 306. .

The judgment from which the first above styled appeal was rendered in April, 1919, and thereafter on August 21, 1919, the second above styled action was brought by the appellants, in which they sought to set aside the judgment rendered against them in the first action, and to obtain a new trial averring that since the judgment was rendered, the original of the lease, under which they claimed and which had been lost and could not be found during the pendency of the suit by Williams and his wife, to have same adjudged void, had been found and that it constituted material evidence in support of its genuineness, and such evidence as to be of controlling effect in determining the result of another trial, and that its loss was a misfortune which no ordinary prudence could have prevented. Williams and wife by answer denied that the lease produced was executed by either of them and charged that it was a forgery. It was proved by Johnston to be the same lease which Meredith assigned in part to him and in part to Braswell, and appears to have been the same one

which Huntsman assigned to Meredith in West Virginia on January 10, 1917, and was recorded in the clerk's office of the Allen county court on January 27, 1917, so far as it could be determined from the record. The deposition of Meredith was not taken. A certificate of Huntsman was upon it, certifying that it had been acknowledged before him as a notary public, by Williams and wife, and over this was pasted a certificate of L. P. Huntsman certifying that as a deputy clerk it had been acknowledged before him by Williams and wife on January 8th, 1917. Braswell deposed that it was the same lease, an interest in which he transferred to Oliver & Dixon, and in this he was corroborated by Oliver. Braswell, although, he could not account for the loss of the lease, when giving his deposition in the first action, stated that the lease had disappeared during the pendency of the first action brought by Williams, and which was dismissed on February 1st, 1919, although it was proven by Oliver that the transfer had been made by Braswell to him on February 5, 1919. C. T. Johnston had testified that he had seen the lease in Braswell's office in the latter part of January, 1919. Oliver who had no knowledge of the execution of the lease, nor any of the circumstances attending it, deposed that on February 5, 1919, Braswell in his office made an assignment to him and Dixon of a 1/6 interest in the lease, as well as an interest in several other leases, but Oliver does not remember that the lease was in his office when the assignment was made, nor does he remember ever to have seen the lease until while searching for another paper among the files of his office in the month of August, 1919, he discovered the lease sticking in the pigeon hole of a desk which was very little used, and delivered the lease to Braswell. The other leases in which Braswell had assigned an interest to Oliver & Dixon on February 5th, 1919, were not found in Oliver's office and if Braswell had them present on that occasion, he took the others with him and left only the lease in controversy, and which must have been put into the pigeon hole, without the knowledge of what it was, by Oliver, or by some other person in his office. There appears to be no reason to doubt the sincerity of the statements of Oliver, and conceding that it is the same lease which Huntsman assigned to Meredith, and Meredith to Johnston and Braswell, it is yet impossible to see how the lease itself, and the

facts in regard to it, has any controlling influence as evidence in favor of the appellants. It should be borne in mind that Williams has persistently stated that he, alone, without his wife joining him, executed a lease to Huntsman, but that same is not the lease under which appellants claim, and that its terms were different from the lease relied upon. The lease produced, with the petition for a new trial, bore the signatures of Williams and his wife, and instead of the name of Mrs. Williams having been subscribed with ink, as Huntsman testified in the original action, and instead of both signatures being made with ink, with Williams' mark attached to his signature, as L. P. Huntsman deposed, and instead of both signatures being in ink as Williams deposed that the signatures to the lease which Braswell showed to him, the signatures to the lease now offered were made with a pencil and the mark of Williams does not appear thereon. R. C. Huntsman now testified that Mrs. Williams subscribed the lease with a pencil at her home, and in his presence, instead of with pen and ink, and he further deposed that Williams acknowledged the lease before him, in his store, at Scottsville, instead of at Williams' home, ten miles away, as Huntsman stated in the original action. Mrs. Williams again deposed that she did not sign nor acknowledge the lease produced, nor any other lease, to Huntsman, and no one deposes that she did except Huntsman. In this statement she is corroborated by the witnesses heretofore adverted to, certain of whom acquainted with her handwriting deposed that the signature of her name to the offered lease was not genuine. William continues to depose, as in the original action, that, he alone executed a lease to Huntsman, and that his wife never did execute any lease, and that the certificate of L. P. Huntsman was not correct, in that, he never acknowledged a lease before him, and had never seen him at that time, and while L. P. Huntsman testified that the acknowledgment before him was taken in the presence of R. C. Huntsman, and at his request, the latter assigning as a reason for retaking the acknowledgment, that Williams had subscribed the lease in pencil and that he wanted it done with ink. R. C. Huntsman still deposes that nothing of the kind occurred between him and L. P. Huntsman, nor in his presence. In addition to the testimony of several neighbors, who testified to their acquaintance with the handwriting of Williams,

that the name subscribed to the lease was not the signature of Williams, five disinterested witnesses, each of whom had had much experience as cashiers and tellers of banks, for periods of from ten to thirty years, in examining and testing the genuineness of signatures, and one of whom was the teacher of penmanship in a business university, after comparing the genuine signatures made by Williams, to 65 checks executed by him within the three or four years last passed, and comparing them with the signature of Williams to the lease, unreservedly gave it as their opinion that the signature to the lease was not that of Williams. The court dismissed the action for a new trial, and the appellants have appealed, also, from that judgment. A well known rule for the guidance of courts in an action for a new trial upon the grounds of newly discovered evidence, is that where the new evidence is claimed to be material upon an issue in the former action, the discovered evidence must be of such character as to have a decisive influence upon the result of the trial in favor of the party, who is seeking for an opportunity to use it in another trial. Torian v. Terill, 122 Ky. 745; Ousley v. Ousley, 117 Ky. 47; Mercer v. Mercer, 87 Ky. 21; Mitchell v. Berry, 1 Met. 602; Allen v. Perry, 6 Bush 85.

The chancellor was evidently of the opinion that the lease offered as the original, which had been executed by Williams and wife, was not their act nor deed and his judgment seems to be sustained by a preponderance of the evidence. Instead of the lease and the proof, in regard to its genuineness, tending to support the defense of the appellants to the original action, it seems rather to give greater weight to the contentions of the appellees.

Both of the judgments, appealed from, are therefore affirmed.