## HONG WING v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 10, 1906.)

No. 1,491.

ALIENS—CHINESE EXCLUSION—CONSTRUCTION OF STATUTE.

 The purpose and effect of Act April 29, 1902, c. 641, 32 Stat. 176, as amended by Act April 27, 1904, c. 1630, § 5, 33 Stat. 428 [U. S. Comp. St. Supp. 1905, p. 295], which provides that all laws in force on April 29, 1902, regulating, suspending, or prohibiting the coming of Chinese persons into the United States or their residence therein, "are hereby reenacted, extended and continued without modification, limitation or condition," was to continue all such laws in force after the expiration of the then existing treaty with China on December 8, 1894, including sections 5 to 14, inclusive, of Act September 13, 1888, c. 1015, 25 Stat. 477-479 [U. S. Comp. St. 1901, pp. 1314-1317], which are therein expressly enumerated.

 [Ed. Notes.—Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

Appeal from the District Court of the United States for the Northern District of Ohio.

Francis J. Wing, for appellant.

John J. Sullivan, for the United States.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges

RICHARDS, Circuit Judge. Hong Wing, the appellant, was arrested on May 19, 1905, under a warrant issued in pursuance of section 13, Act Sept. 13, 1888 (25 Stat. 479, c. 1015 [U. S. Comp. St. 1901, p. 1317]), charged with being a Chinese person, or person of Chinese descent, found unlawfully in the United States, and after a hearing before a commissioner of the United States was adjudged to be one not lawfully entitled to be or remain in the United States, and ordered deported. On an appeal, a demurrer to the complaint was overruled and the order of deportation affirmed. The sole question arises upon the demurrer and is whether, at the time of the complaint and arrest, the Chinese exclusion laws, including section 13, of the act of September 13, 1888, were still in force, the contention of the appellant being that they all expired on December 8, 1904, along with the treaty with China of December 8, 1894 (28 Stat. 1210). The court below held that these exclusion laws were continued in force by the act of April 27, 1904 (33 Stat. 428, c. 1630, § 5 [U. S. Comp. St. Supp. 1905, p. 295]), and the decision of the question turns upon the proper construction of this act.

All the Chinese exclusion laws then in force, including section 13 of the act of September 13, 1888, were continued in force for a period of ten years from its passage by the act of May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1319]), and were further "re-enacted, extended, and continued" by the act of April 29, 1902 (32 Stat. 176, c. 641 [U. S. Comp. St. Supp. 1905, p. 295]), evidently passed in view of the expiration on May 5, 1902, of the act of May 5, 1892, which provided in the first section:

"That all laws now in force prohibiting and regulating the coming of Chinese persons, and persons of Chinese descent, into the United States, and the residence of such persons therein, including sections five, six, seven, eight, nine, ten, eleven, thirteen and fourteen of the act entitled 'An Act to prohibit the coming of Chinese laborers into the United States,' approved September thirteenth, eighteen hundred and eighty-eight, be, and the same are hereby, re-enacted, extended, and continued so far as the same are not inconsistent with treaty obligations, until otherwise provided by law," etc.

The proviso "so far as the same are not inconsistent with treaty obligations, until otherwise provided by law," obviously referred primarily to the treaty of December 8, 1894 (28 Stat. 1210), which absolutely prohibited the coming of Chinese laborers, except under certain conditions, to the United States for a period of 10 years from its date. This treaty in its concluding article provided that if, 6 months before the expiration of the period of 10 years, neither government should have formally given notice of its final termination to the other, it should remain in full force for another like period of 10 years.

Prior to April 27, 1904, it was known to the government of the United States that this treaty would not be continued in force, but

142 F.—9

would expire on December 8, 1904, and on April 27, 1904, Congress passed the fifth section of the act of that date (33 Stat. 428, c. 1630, § 5), which amended section 1 of the act of April 29, 1902, so as to read as follows:

"All laws in force on the twenty-ninth day of April, nineteen hundred and two, regulating, suspending or prohibiting the coming of Chinese persons or persons of Chinese descent into the United States, and the residence of such persons therein, including sections five, six, seven, eight, nine, ten, eleven, thirteen and fourteen of the act entitled 'An act to prohibit the coming of Chinese laborers into the United States,' approved September thirteenth, eighteen hundred and eighty-eight, be, and the same are hereby, re-enacted, extended and continued, without modification, limitation or condition," etc.

It is obvious that the act of April 27, 1904, was passed in view of the early expiration of the treaty of 1894, and for the purpose of continuing the Chinese exclusion laws in force after its expiration, regardless of treaty obligations. Otherwise what reason was there for its passage? The act of April 29, 1902, was passed for the purpose of continuing the exclusion laws in force during the existence of the treaty and was in operation on April 27, 1904, and would remain in operation until December 8, 1904, when the treaty would expire. No further legislation was therefore needed during the existence of the treaty to keep the exclusion laws in force.

But the act of April 29, 1902, continued the exclusion laws in force only "so far as the same are not inconsistent with treaty obligations." The pertinent treaty obligations then in force were those of the treaty of December 8, 1894, but on December 8, 1904, it would become a question whether the expiration of this treaty would not revive provisions of the earlier treaties of July 28, 1868 (16 Stat. 739), and November 17, 1880 (22 Stat. 826), which because of their inconsistency would embarrass the government in the enforcement of the exclusion laws. It was therefore necessary to state plainly the position the government intended to take after the expiration of the treaty, and this was done by amending the act of April 29, 1902, so as to strike out the words "so far as the same are not inconsistent with treaty obligations, until otherwise provided by law," and inserting in lieu thereof the words "without modification, limitation or condition," thus continuing the exclusion laws in force without limitation by any existing treaty obligations and irrespective of whether they might or might not conflict therewith. If inconsistent with any treaty obligations which might appear to be in force after the expiration of the treaty of 1894, the latter must be held to be abrogated under the power which Congress has to repeal or modify even a treaty, if it shall deem the public welfare so demands. Head Money Cases, 112 U. S. 580, 599, 5 Sup. Ct. 247, 28 L. Ed. 798; Whitney v. Robertson, 124 U. S. 190, 8 Sup. Ct. 456, 31 L. Ed. 386; Chinese Exclusion Case, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068.

The judgment of the court below is affirmed.