# CHARLESTON.

ESKRIDGE *et al.* v. THOMAS *,et al.*

Submitted November 21, 1916.   Decided November 28, 1916.

1. USURY—*Statutes—Negotiable Instruments Law.*
   The act known as the negotiable instruments law (ch. 81, acts 1907; ch. 98a, Code) does not, by implication or otherwise, repeal, limit or qualify in any degree or in any particular §5, ch. 96, Code, declaring all contracts for the loan of money at a greater interest rate than now allowed by law void as to such excess. (p. 325).

2. BILLS AND NOTES—*Usurious Contracts—Validity.*
   A contract by statute declared void, because in part usurious, is as to such usury a nullity, and, although negotiable in form, no curency in the market and no innocence or ignorance on the part of the holder can impart validity to it.   (p. 325).

3. DISCOVERY, BILL OF—*Construction.*
   A bill merely praying an injunction to restrain the prosecution

- of an action at law until a discovery can be had in aid of the defense thereto, also prayed, is purely a bill of discovery, and not one for relief. (p. 325).

4. INJUNCTION—*Dissolution.*

An injunction, awarded on such a bill, generally ought not to be dissolved on motion until defendant has a reasonable opportunity to answer the interrogatories propounded to him, or plaintiff a like opportunity to coerce such answer by proper procedure. (p. 325).

5. SAME.

A defendant who answers such a bill may, in lieu of a motion to dissolve the injunction, move for an order to require plaintiff to speed the cause as to a defendant not answering, under penalty of a dismissal thereof or dissolution of the injunction, enforceable thereafter by notice and motion. 16 Cyc. 463. (p. 325).

6. DISCOVERY, BILL OF—*Nature of Relief.*

A bill framed for the purpose of discovery to aid in defense of a law action is limited to that object, and its attainment by an answer to interrogatories operates to end the suit, although the bill also prays for an injunction to restrain temporarily the prosecution of that action. (p. 325).

Appeal from Circuit Court, Upshur County.

Suit by R. S. Eskridge and others against Wellington Thomas and others, and the Traders' National Bank of Buckhannon. From a decree for complainants, the last-named defendant appeals.

*Affirmed.*

*Young & McWhorter,* for appellant.

*Higginbotham & Cutright,* for appellees.

LYNCH, JUDGE:

The plaintiffs made a negotiable note and several renewals of the same instrument payable to Wellington Thomas, who endorsed them in turn to the Traders National Bank in due course. Neither the date of the transaction out of which the indebtedness originally arose, or of any of the renewals, is disclosed except the last one. On it the endorsee sued the makers and endorser. The former then filed their bill against the plaintiff in that action and the defendant Thomas to en-

join its further prosecution. They allege "usury in said note and the preceding notes and the transaction preceding the execution of the first note", and their lack of knowledge of the "amount of usury in said transaction", and "that it is material to them that said note be purged of the usury therein". Wherefore, "being remediless in the premises save by the aid of a court of equity", they pray that defendants "be required to make full, true and perfect answer to every of the" interrogatories propounded in the bill.

In this manner plaintiffs seek to ascertain from both defendants "whether interest has been paid on said note, original note and renewals thereof above six per cent, and if so to what extent" and, from Thomas only, "whether in the first transaction, before the original note was executed", "there has been paid a greater amount of interest than six per cent, and if so to what extent".

Upon these allegations, the others being purely formal, the injunction prayed was awarded in vacation. To the bill Thomas has not appeared for any purpose; nor have any proceedings been instituted to compel his attendance. The bank demurred, and, the demurrer being overruled, filed its answer, and therein averred the negotiation of the several notes in due course before maturity, without notice of any defect in the instrument or infirmity in the title of the endorser. These averments, replied to generally, the bank proved by its cashier Graham. By counsel for the parties it was agreed that at the time the original note was discounted, and at the time of the renewals thereof, neither the bank nor any member of its board of directors "had any notice or knowledge of any claim of usury on the part of the plaintiffs as between them and the payee Wellington Thomas". At this stage of the proceeding, the bank moved to dissolve the writ restraining the prosecution of the action at law. This motion the court denied, but modified the vacation order so as to permit the bank to proceed to judgment against Thomas.

The appeal awarded to it can be entertained only by reason of the authority conferred by clause 7, §1, ch. 135, Code, as the order is interlocutory, not final. The demurrer and motion overruled raised precisely the same questions. To these

our investigations necessarily are restricted. The facts are involved only incidentally.

It should be remembered that the sole purpose of this suit is to test the conscience of the defendants, that plaintiffs may from them personally extract knowledge or information of the transaction and its sequential results in which they were joint or separate actors. The bill, while praying for general relief, apparently is a pure bill for discovery. It does not contain sufficient averments or prayer to permit the adjudication of the whole subject matter involved in the law action. The authorities generally hold that a bill asking no relief other than discovery is limited to that object, and upon obtaining it by the answer of the defendant the suit is ended. This rule is sustained alike upon authority and principle. 1 Pom. Eq. §191; Story Eq. §1483; Mit. Eq. Pl. 16; *Telephone Co.* v. *Mohler,* 51 W. Va. 6. Nor does such a bill become one for relief because it seeks an injunction to stay the action at law until the discovery is obtained. *Russell* v. *Dickeschied,* 24 W. Va. 61. What plaintiffs assumed Thomas knew that they did not know, as an aid to their defense in the law action, was the real object prompting this proceeding, and not his admission *in pais.* If any such admissions he made, they were available for use upon the trial stayed by the injunctive process.

Plaintiffs evidently were satisfied with the answer of the respondent bank, else they would not have signed the agreed statement of facts. That statement precludes a denial of its verity. It was accepted as true. But they did not by proper procedure require or attempt to require Thomas to answer. Nevertheless, their delay to inaugurate such proceeding did not alone warrant dissolution of the injunction. They could not, from the very nature of the bill, take proof to support its averments; wherefore they were not in default. While *Shonk* v. *Knight,* 12 W. Va. 667, says a plaintiff must be diligent in his effort to procure the answer of all the defendants upon whom rests the gravamen of the charges contained in the bill, it states the general rule to be that an injunction ought not to be dissolved until all the defendants implicated have answered. *Russell* v. *Dickescheid,* 24 W. Va. 61, applies

this general rule to the dissolution of an injunction awarded upon a pure bill of discovery enjoining prosecution of a detinue action, and holds that until the defendant has answered the injunction ought not to be dissolved. The record before us does not show lack of diligence on the part of the plaintiffs in not taking the necessary steps to coerce a response by Thomas to the interrogatories propounded to him. The injunction was granted March 10; four days later the Traders National Bank notified plaintiffs of its purpose to move a dissolution on March 15, 1916; the order refusing to dissolve was entered June 9 of the same year. At the same time, the court ruled upon the question of law raised by the demurrer. By its interposition the defendant challenged the legal sufficiency of the bill. For this delay plaintiffs were not in anywise responsible. They could not know what action the court would take on the demurrer or the motion to dissolve. Wherefore, the time intervening between the entry of the demurrer and the giving of the notice and the action of the court on both virtually operated in justification of plaintiffs' delay during that period. Besides, the defendant that answered was not wholly without a remedy for the default, if any, as by a motion for an order requiring plaintiffs to speed a hearing on penalty of a dismissal of the cause or dissolution of the injunction if thereafter they unduly delayed compliance with that requirement. We think, therefore, the court did not err in refusing to dissolve the injunction.

Although meager, the averments of the bill may be deemed and treated as formally sufficient. Section 6, ch. 96, Code, permits any defendant sued on a contract for the loan or forbearance of money at a greater rate of interest than six per cent to plead the usury in general terms, to which plea the plaintiff shall reply generally, and each party on the trial of that issue may introduce any available evidence that tends to sustain or traverse the existence of usury inhering in the contract in issue. Or the borrower may resort for aid in establishing the usurious character of the contract to section 7, which gives him the right to exhibit his bill in equity against the lender, and coerce him to state upon oath the money or thing lent and all transactions referable to such

loan, and the interest or consideration thereof. These provisions are quite liberal, and perhaps were intended to render· unnecessary the usual formal averments required either at law or in equity.

But chiefly it is not the lack of such formality of which the Traders National Bank complains. To defeat the discovery sought by the bill, it relies in its answer and demurrer upon the construction or interpretation of certain sections of the negotiable instruments law. It is contended that, although §5, ch. 96, declares void all contracts for the loan or forbearance of money as to any excess of interest charged above the legal rate, yet, under sections 52, 55 and 57 of the negotiable instruments act, chapter 98a of the Code, the defendant bank, as a holder in due course, took the instrument relieved of usury, if any, charged on the notes in the original transaction. Under §52, it contends it was such a holder, because the instrument is complete and regular upon its face, was not overdue when negotiated, and the bank took it in good faith and for value, without notice that it had previously been dishonored, if such was the fact, or of any infirmity in the note or defect in the title of the endorser; that, under §55, the title of Thomas was not defective, within the meaning of the act, unless he obtained the instrument or any signature thereto by fraud, duress or other unlawful means, or for an illegal consideration, or in breach of faith or under such circumstances as amount to fraud;· and that, if he did so obtain it, respondent, as a holder in due course, took the instrument, by virtue of §57, ''free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon''.

These sections do, it is true, attempt to afford ample protection to persons purchasing negotiable paper, and to give it such facility of circulation as the exigencies of commercial business may require; indeed, to obviate and avoid every impediment or obstruction that in any substantial degree tends to destroy confidence in instruments of that character. Business enterprises suffer inconvenience from anything that im-

pedes the facile circulation of any medium of exchange with banking institutions or money lenders. Financial emergencies arrest their progress frequently, and require immediate resort for relief to the monetary centers of influence. Business and industrial activities of every character depend in large measure for success upon the readiness with which they can float their bills and notes, checks and other like instruments common in commercial usage. To meet these trade requirements, to facilitate the movement of capital, and to inspire confidence and correct some defects or deficiencies in the circulation of commercial paper, manifestly were some of the purposes to be subserved by the enactment of the negotiable instruments law.

But, conceding the wholesomeness, materiality and benign purpose of this legislation, that *concessum* can not be permitted to violate or ignore other equally beneficent and essential statutory provisions. These the law making branch of the government, not the court, must repeal or amend, if necessary, to suit public convenience. It is not within the power or province of judicial tribunals to say what the law ought to be. Courts exercise a limited authority. They can legitimately inquire only what the legislature intended when it enacted a statute. To them belongs the right of interpretation and construction, to ascertain what the principles governing a given state of facts are, and, when ascertained, to apply the principles to the facts, irrespective of the interests helped or hurt.

Unrepealed and unamended stands an enactment of an earlier date and of equal dignity with the negotiable instruments law. Long ago competent authority declared "all contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing at a greater rate of interest than six per cent, except where such greater rate is now allowed by law, shall be void as to any excess of interest agreed to be paid above that rate, and no further". §5, ch. 96, Code. This legislative declaration, taken from the code of Virginia, materially altered and amended a yet earlier statute forfeiting both principal and interest where the rate charged exceeded that fixed by law, and a subsequent one for-

feiting the interest only. Now the contract or assurance is void only as to the excess of interest above the legal rate.

To bring the note in controversy within the protection of the negotiable instruments act, as contended by the bank, would in effect substitute "voidable" for "void" in §5, ch. 96. Much competent authority tends to support this argument. *Ewell* v. *Daggs,* 108 U. S. 145; *Weeks* v. *Bridgman,* 159 U. S. 547; *Myers* v. *Kessler,* 142 Fed. 130; *Gordon* v. *Levine,* 197 Mass. 263; *Trust Co.* v. *Bank,* 136 Mich. 460. The contrary proposition is upheld in numerous decisions of equally respectable courts. They declare unenforceable by an innocent holder any instrument by statute declared to be void because usurious, or because it arose out of gaming or other transactions in violation of a statute. These are collated in 4 Am. & Eng. Ann. Cas. 353. An act or contract so declared to be void has no legal force or effect. It is a nullity, and into it can be injected no vitality, although in some circumstances the conduct of the parties may be such as will upon equitable principles operate to estop them to deny they entered into or are bound by it, as where they accept the benefits thereof with knowledge of the infirmity. No currency in the market, and no degree of innocence or ignorance on the part of a holder for value, can impart validity to a negotiable instrument which is declared void by statute because based upon a gambling or usurious consideration. Daniel & Douglass Neg. Inst. §221. Speaking of notes made void by statute, the Kentucky court said in *Lawson* v. *Bank,* 102 S. W. 324: A statute that makes such notes void "is of a police nature, intended to prevent imposition and fraud. The negotiable instruments act does not repeal this statute in terms nor does it by necessary implication. It has never been the policy of the courts to extend the doctrine of implied repeals further than the evident purpose of the last legislation required. The negotiable instruments statute is a most comprehensive piece of legislation. It goes into minutest detail in dealing with the subjects embraced by it. The whole scope of it is shown to be the dealing with commercial paper, so as to protect innocent purchasers against mere defenses available as between the original parties. It gives such paper

currency, free from original defenses. But it applies to paper that might have been obligatory between the parties. But, where the parties were never bound because the law made the note void, as contrary to public policy as expressed in the statutes, the negotiable instruments act does not apply, and ought not to. The prevention of crime is of more importance than the fostering of commerce. The later act should be read in view of its purpose, and not as intending to repeal other statutes passed in the exercise of the police power of the state to suppress crime and fraud''. That is in substance what this court said in *Bank* v. *Jacobs,* 74 W. Va. 525,. in which it was held that a paper negotiable in form for money lost in gaming is, under §1, ch. 97, Code, void in the hands of the holder, even though he took it for value without notice of the character of the consideration.

The obvious purpose and effect in enacting the negotiable instruments law was the embodiment of the general law merchant as it had been previously applied by the courts. The presumption is that when passing it the legislature had in contemplation the existence of the usury statute and the decisions of Virginia and this state construing it as invalidating all contracts comprehended within its scope. It knew, as we must assume, that, by a prior general rule, where a statute declares an instrument void it gathers no vitality by circulation, although upon such instrument an endorser may be held liable to a bona fide holder without notice. Daniel Neg. Inst. 673. The Virginia court had already declared that as against an innocent holder no defense can be made against a negotiable instrument declared by the usury statute to be void. ''The original taint adheres to the paper in whosesoever hands it may come. It is. void, and the defense may be set up as well against the innocent holder as the usurer or gambler himself''. *Taylor* v. *Beck,* 3 Rand. 323. Where there is nothing in a statute indicating an intention to the contrary, the well recognized doctrine is ''that the legislature did not intend to innovate upon, unsettle, alter, violate, repeal or limit another general statute or statutory system the entire subject matter of which is not directly or necessarily involved in the subsequent act''. *Bank* v. *Jacobs, supra.*

From these conclusions it follows that, as the rulings on the demurrer and motion to dissolve were not erroneous, our order will affirm the decree complained of, and remand the cause for further proceedings therein, agreeably with equitable principles governing courts of equity in cases of this nature.

*Affirmed.*