## Levy v. Doerhoefer's Executor.

(Decided June 8, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Gaming—Gambling Contracts and Transactions.—As by Kentucky Statutes, section 1955, all contracts based upon a consideration arising out of betting, gaming or wagering transactions are declared absolutely void, a bill or note given for a gambling consideration imposes no liability upon the maker or drawer. Being void ab initio, its payment cannot be enforced against the maker or drawer even by an innocent holder thereof, except under the conditions stated in the paragraph below. which are not found to exist in this case.

2. Gaming—Gambling Contracts and Transactions—Innocent Holder of Bill or Note—Estoppel.—The only exception to the above

rule applies where the innocent holder of the bill or note, acquires it without knowledge that it was given for a gambling consideration and is induced to accept it by the assurance of the maker or drawer that it was given for a valid consideration and would be paid by him according to its terms. In such state of case the latter, if sued upon the bill or note by such innocent holder, would be estopped to set up as a defense the illegality of its consideration.

SELLIGMAN & SELLIGMAN for appellant.

WALTER E. HUFFAKER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The controversy in this case is as to the right of the appellant, Frederick Levy, to recover of the appellee, Fidelity and Columbia Trust Company, executor of the will of Louis P. Doerhoefer, deceased, the amount of a note of $1,663.05, with six per cent interest from its maturity, October 18, 1916, executed by Louis P. Doerhoefer, July 18, 1916, to one Samuel Dinkelspiel and payable to his order, who, acting on the advice of the appellant, Levy, July 25, 1916, endorsed the note to the Liberty Insurance Bank of Louisville, which accepted and discounted it at the request of Levy and upon his written guaranty that he would see it paid at maturity.

As the note was not paid at maturity by the maker or endorser, it was then paid by Levy, in compliance with his guarranty and delivered to him by the Liberty Insurance Bank, containing the indorsement of Dinkelspiel, the payee. The death of Louis P. Doerhoefer having occurred in the meantime, this action was brought in the court below by the appellee, Fidelity and Columbia Trust Company, executor of his will, for a settlement of his estate, to which the known creditors of the testator were made parties defendant. By an order of the court there was an early reference of the cause to the master commissioner for the ascertainment and a report of the assets and liabilities of the estate, with authority to take proof regarding any controverted debt.

Among the claims presented against the estate was the note in question, which appellant filed with the commissioner, verified by the affidavits respecting such claims required by the statute. At the time of, or shortly after, filing the note with the commissioner the appellant filed in the court below his answer to the petition

of the appellee, executor, which was made a cross-petition against the latter, wherein was alleged the due execution of the note by Louis P. Doerhoefer to Samuel Dinkelspiel; appellant's ownership thereof by assignment from Dinkelspiel; its subsequent maturity and non-payment by the maker and the fact that it had been filed with the commissioner for its allowance by the latter as a debt against Doerhoefer's estate. By the prayer of the answer and cross-petition judgment was asked against appellee as executor of Doerhoefer for the amount of the note, and interest from its maturity.

To this answer and cross-petition of the appellant, appellee filed a responsive pleading, styled an answer and reply, which denied appellant's ownership of the note or its assignment to him by Dinkelspiel, the payee, for value; and, in substance, pleaded the following facts as a bar to the recovery on the note sought by appellant, viz.: that the note was executed by Doerhoefer to Dinkelspiel in settlement and payment of the aggregate amount of various sums all lost by the former and won of him by the latter in divers unlawful gaming transactions between them, which, as further alleged, made the consideration an illegal one and rendered the note void *ab initio;* furthermore, that these facts and the consequent vice in the note were fully known to the appellant when and before it was assigned him or came into his possession; hence, he did not become, and is not, a purchaser or holder thereof in good faith or for value. All affirmative matter of appellee's answer and reply was controverted by appellant's rejoinder. Following such completion of the issues and the taking of all proof offered by the parties, the commissioner in and by his report filed in the circuit court held the note void and refused to allow it as a valid demand against Doerhoefer's estate. Appellant filed in the circuit court an exception to so much of the commissioner's report as rejected the note, but on the hearing that court overruled the exception, confirmed the report and dismissed the appellant's cross-petition. From the judgment manifesting these rulings, the latter has appealed.

From what has been said of the contents of the appellant's pleadings, it will be observed that his claim of ownership of the note in suit is made to rest on its assignment to him by the payee, Dinkelspiel, and not upon the fact of his (appellant's) payment of it after it was discounted by the Liberty Insurance Bank for Dinkel-

spiel at appellant's request; for the discounting of the note by the bank, admittedly, at appellant's request and upon his guaranty of its payment at maturity, as well as the time and manner of his payment of it and its delivery to him by the bank was first developed by the evidence produced to the commissioner in his behalf. However, in view of his alleged ownership of the note, it is not material in which of the ways mentioned he acquired it. And if in fact the note was executed by Doerhoefer to Dinkelspiel in consideration or settlement of moneys lost by the former and won of him by the latter in gambling transactions in which they engaged, it is not material to the decision of the case whether the appellant at the time of purchasing or otherwise acquiring the note was or not ignorant that such was its true consideration. Therefore, the important question presented for decision by the appeal is, was the note given to evidence an indebtedness of the maker to the payee arising out of a gambling transaction or transactions? If so the appellant, though shown by proof to be a purchaser for value and holder in good faith of the note, will not be allowed to recover the amount thereof of the estate of the deceased maker, in the absence of a further showing by proof that he was induced to purchase the note, or accept an assignment of it, by reason of the assurance of the maker that it was a legal obligation and would be paid by him; of which there is no evidence whatever to be found in this record. Kentucky Statutes, section 1955 provides:

"Every contract, conveyance, transfer, or assurance, for the consideration, in whole or in part, of money, property, or other thing won, lost or bet in any game, sport, pastime, wager, or for the consideration of money, property, or other thing lent or advanced for the purpose of gaming, or lent or advanced at the time of any betting, gaming, or wagering to a person then actually engaged in betting, gaming, or wagering, shall be void."

By section 1956, it is provided that recovery by suit at any time within five years may be had by the loser, or his creditor, of the winner, or his transferee having notice of the consideration, of any money to the amount, or property of the value therein stated, that may have been lost in gaming at one time or within twenty-four hours; and that such recovery may also be had against the winner, although the payment, transfer or delivery was made to his indorsee, assignee or transferee.

Another section of the statute makes it a misdemeanor, punishable by fine, for any person or persons to engage in any hazard or game of chance on which money or other property is bet, won or lost; and yet others declare it a felony, punishable by confinement in the penitentiary, to set up and operate games for betting, book making on racing, houses or contrivances for gaming; all conducing to show the law's abhorrence of gambling and that it is the public policy of the state to do all in its power to suppress the evil. It will be observed that the language of section 1955, *supra*, is exceedingly broad and forceful in its condemnation of all contracts resting upon a consideration arising out of a betting, gaming or wagering transaction; for by it all such contracts are declared absolutely void. It extends no protection to the innocent purchaser or holder in good faith of a note given for a gambling consideration. In such a case the note will be declared void. Such has been the construction given the statute by numerous decisions of this court. In Bohon's Assignees v. Brown, 101 Ky. 355, quoting from Cochran v. German Ins. Bank, 9 R. 196, decided by the superior court, we said:

"A bill or note based on a gambling consideration is absolutely void and the drawer or maker is not bound even to an innocent holder."

And in the case of Farmers' and Drovers' Bank v. Unser, 13 R. 966, the court said:

"The whole current of authority is that the obligor may insist upon the illegality of the contact or consideration, notwithstanding the note is in the hands of an innocent holder for value in all those cases in which he can point to an express declaration of the legislature that such an illegality makes the contract void."

In Alexander & Co. v. Hazelrigg, 123 Ky. 677, the opinion discusses at length the question under consideration and reviews numerous authorities bearing on it; and we therein held that when a statute in express terms declares contracts growing out of wagering or gambling transactions, which are prohibited by statute, absolutely void, no recovery can be had upon a note evidencing such a contract, even where the action is brought by an innocent holder of the note. The contention was made in the case, *supra,* that Kentucky Statutes, section 1955, in so far as it declares contracts growing out of wagering or gambling transactions void, has been repealed by the "Negotiable Instruments" act of 1904,

providing for the protection of innocent holders of negotiable instruments. In rejecting that contention we said:

"It has been the policy of this state to suppress gaming, and the statutes making gaming contracts void are founded upon what the legislature has for many years deemed to be sound public policy. It is inconceivable that the general assembly, in the passage of the act of 1904 for the protection of innocent holders of negotiable instruments, intended to or did repeal section 1955, Kentucky Statutes, 1903, which declares all gaming contracts void. In our opinion the disappointment now and then of an innocent holder of a negotiable instrument, would not be as hurtful and injurious to the best interests of the state as the removal of the ban from gaming contracts. . . ." Daniel on Negotiable Instruments, sec. 197; Sondhein v. Gilbert, 117 Ind. 71.

In the later case of Holzbog v. Bakrow, 156 Ky. 161, the doctrine that where a note is given for a gambling consideration its infirmity may be shown against a *bona fide* holder, was again approved, but with this qualification authorized by the facts of that case, viz.: that the maker of such a note who induces another to purchase it of the payee, assuring him that it is valid and will be paid, cannot set up the illegality of the consideration against the assignee, who had no notice thereof; as in that case the doctrine of estoppel will be applied to prevent such defense. Woolridge v. Cates, 2 J. J. Mar. 222, 16 Cyc. 783.

But however great his ignorance of the illegality of the consideration for which the note here sued on was given, the appellant, as assignee thereof, cannot rely on such estoppel, as he has neither alleged nor attempted to prove that he was induced to purchase the note or accept an assignment of it by anything said or done by the maker. So if the finding of the commissioner that the consideration for the note was a gambling debt or debts owing by the maker to the payee, is supported by the evidence as set forth in his report, the action of the chancellor in overruling appellant's exception to such finding was amply authorized. And in looking to the evidence we find it all to the effect that the note was given in settlement of an indebtedness of Louis P. Doerhoefer to Samuel Dinkelspiel growing out of gambling transactions between them.

It is true that the greater part of this evidence was furnished by the testimony of Huffaker, the attorney of Doerhoefer and later of appellee his executor, and by Brown a servant of Doerhoefer, the competency of which is now complained of by appellant. But we do not find that exceptions were filed by appellant to this evidence with the commissioner or to his report on that ground after it was filed in court; and if filed it is manifest from the record, that they were not passed on by the chancellor. It is a well recognized rule of practice and procedure, that when exceptions filed to the depositions of witnesses are not passed on in the circuit court, or, if passed on, no exception was taken to the ruling of that court thereon, upon appeal, the Court of Appeals will regard such exceptions as having been waived, and treat the case as if no question had been made as to the competency of the witness or witnesses, or as to the admissibility of his or their testimony. Civil Code, sec. 589; Hatfield, Admr. v. Hatfield, 166 Ky. 761; Lewis v. Wright, 3 Bush 311; Corn v. Sims, etc., 3 Met. 398; Bronston v. Bronston, 141 Ky. 639; Patterson v. Hensel, 4 Bush 654; L. & N. R. R. Co. v. Graves, 78 Ky. 74.

We are therefore prevented by the rule, *supra,* from passing on the competency of the evidence in question, which is not only uncontradicted but strengthened by the testimony of the appellant himself admitting his intimacy with Dinkelspiel, the fact that the latter was his tenant when the note was executed, and his knowledge that he conducted in the building rented of him gambling transactions, such as book making on horse racing and the like. Dinkelspiel was not introduced as witness.

On the whole case we find no reason for disagreeing with the report of the commissioner, or the action of the circuit court in confirming the same and dismissing the cross-petition of appellant. Wherefore the judgment is affirmed.