### BLANCHARD PRESS, INC., v. STANTON

#### (132 S. E., 617)

BILLS AND NOTES—WHETHER PLAINTIFF WAS INNOCENT PURCHASER OF
NOTE FOR VALUE BEFORE MATURITY HELD FOR JURY.—Evidence *held*
for jury on question whether plaintiff was purchaser for value be-
fore maturity without notice of defect of note given in part pay-
ment for corporate stock.

Before MEMMINGER, J., Marlboro, Spring Term, 1924.
Affirmed.

Action by Blanchard Press, Inc., against Lila M. Stan-
ton. Judgment for defendant, and plaintiff appeals.

*Messrs. Laughlin, Houck & Thomas,* for appellant, cite:
*Bona fide holder of note before maturity not affected by
fraud in the inception:* 105 S. C., 100; 89 S. E., 657.
*Holder in due course defined:* Civ. Code, 1922, Sec. 3703.
*Holder in due course holds free of prior equities:* Civ. Code,
1922, Sec. 3708. *Note payable to order of maker negoti-
able:* 6 A. L. R., 456. *Pre-existing indebtedness a valuable
consideration for note:* 122 S. E., 24; 105 S. C., 100; 89
S. E., 977; 40 L. R. A. (N. S.), 454. *Contracts of sale
for future delivery:* Civ. Code, 1922, Secs. 5165-5169;
108 S. E., 159; 82 F:, 833. *Same; burden of proving such
transactions bona fide:* Civ. Code, 1922, Sec. 5166.

*Messrs. McColl & Stevenson,* for respondent, cite: *Note
given for usurious interest or for gambling debt void in
hands of bona fide holder:* 26 S. C. L., 224; 9 S. C. L.,
200; 2 S. C. L., 23; 7 L. R. A. (N. S.), 769. *Contracts of
sale for future delivery:* Civ. Code, 1922, Secs. 5165–5169;
11 A. L. R., 207; 8 A. L. R., 309; 3 R. C. L., 910; 8 C. J.,
764.

April 16, 1926.

The opinion of the Court was delivered by MR. JUSTICE
WATTS

The "Case" contains the following statement:

"This is an action on a promissory note commenced in the Circuit Court of Common Pleas for Marlboro County by service of summons and complaint on the defendant on the —— day of ———, 192—. The defendant answered, interposing the defense of fraud and counterclaim for $1,-000.00, alleged to have been fraudulently obtained from defendant. To the counterclaim plaintiff filed a general denial. The case came on to be heard before his Honor, R. W. Memminger, and a jury at the regular spring term of 1924 of the Court of Common Pleas for Marlboro County.

"Briefly stated, the facts giving rise to this case are: The defendant agreed to purchase a certain number of shares of the capital stock of a corporation as the Talking Book Corporation, and in consideration therefor paid the sum of $1,000.00, and in addition executed and indorsed the note in question as part purchase price for said stock. The plaintiff claims the note was subsequently and before its maturity indorsed by the Talking Book Corporation and delivered to the plaintiff for value. The testimony of plaintiff's witnesses was taken by deposition, and was read to the jury without any objection from the defendant's counsel. The defendant then testified over the objection of plaintiff's attorneys. The plaintiff was overruled by the trial Judge in its motion for a verdict by direction. The jury rendered a verdict for the defendant."

Plaintiff appeals, and by exceptions, six in number, challenges the correctness of his Honor's ruling and charge to the jury.

His Honor, the late lamented Judge Memminger, by his charge to the jury declared the law so ably and clearly that the jury could not be in doubt as to what the issues were and the law of the case. It is as clear a statement of the issues and the law applicable thereto as any case ever tried.

We think there was enough evidence to be submitted to the jury whether the plaintiff was an innocent purchaser

for value before maturity, or whether it acquired title after maturity or with knowledge of defect. His Honor was not in error in submitting the question to the jury whether the plaintiff did not know at the time it acquired the note that there had been a failure of consideration because it represented worthless capital stock, and it was for the jury to determine from the indorsements on the note the date and order thereof, whether the plaintiff acquired the note subsequently to its maturity, and that under the proof a future sale of stock was made out, and this made the note void, unless and until the plaintiff assumed the burden of proving the prerequisites to recovery laid down in the statute.

We are satisfied with the ruling of his Honor and his clear and comprehensive charge, and see no error.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur.

MR. JUSTICE COTHRAN: I concur in the opinion of Mr. Justice Watts, but, with great respect for him and his views, I desire to express my impressions of this case.

The plaintiff, claiming to be a holder in due course of the note in question, brought suit upon it, after the refusal of the defendant to pay it. The defendant answered the complaint, alleging that the note was obtained by fraudulent misrepresentations and was without consideration. She also set up a counterclaim for $1,000.00, which she paid in cash at the time the alleged contract was entered into.

The case was tried by Judge Memminger, Circuit Judge, and a jury, and resulted in a verdict for the defendant. The appeal of the plaintiff assigns errors: (1) In the admission of certain evidence; (2) in the refusal of the presiding Judge to direct a verdict in its favor; and (3) in certain portions of the charge to the jury, which will be considered in the order named. Before doing so, a statement of the circumstances bearing upon the questions to be considered will be given.

It appears that two artists of approved smoothness of speech, utter strangers to the defendant, approached her, and, with the most alluring and deceitful representations, induced her to contract for the purchase of $3,000.00 of stock in a corporation doing business in New York City. She paid them $1,000.00 in cash, and gave a note for the remainder, $2,000.00; the stock to be delivered upon payment of the note. The note was a negotiable promissory note, dated May 3, 1920; payable to the order of herself, on September 3d thereafter, for the amount stated, with interest from maturity at 7 per cent., and 10 per cent. attorney's fees. The stock contracted for was never delivered or tendered to the defendant.

At the time of the date of the note, the evidence tends to show that the corporation whose stock was contracted for, "Talking Book Corporation," was largely indebted to another corporation, "Blanchard Press, Inc.," for printing and other work done for it by still another corporation, "Isaac H. Blanchard Company," and by the Blanchard Press Inc.; and that all of the assets of the Isaac H. Blanchard Company had been assigned to the Blanchard Press, Inc. Although the Isaac H. Blanchard Company had apparently been absorbed by the Blanchard Press, Inc., both corporations were still in existence—that of the Isaac H. Blanchard Company being only nominal—with the same president.

On August 6, 1920, the Blanchard Press, Inc., was, and for some time had been, pressing the Talking Book Corporation for settlement of its past-due accounts, and was threatening suit. In order to gain further time, and as collateral security to the claims held by the Blanchard Press, Inc., against it, the Talking Book Corporation turned over by indorsement a number of notes against various parties which had not then matured, including that of the defendant, to one A. J. Brower, the president of the Blanchard Press, Inc. A receipt was given to the Talking Book Corporation for the notes so indorsed and transferred. It was signed by the Isaac H. Blanchard Company, as the president of the

Blanchard Press, Inc., testified, inadvertently; that the notes were intended to be transferred to the Blanchard Press, Inc., and had never passed into the possession of the Isaac H. Blanchard Company. The receipt contained the following statement:

"We (that is, the signers of the receipt), are to hold these as collateral security for the payment of your ('Talking Book Corporation's) indebtedness to us, in addition to such other collateral security as we possess on this date, and to collect them as they fall due, and apply the proceeds to the credit of your account."

The note of the defendant, sued upon, bore the indorsement of the defendant (it having been drawn payable to herself or order), and also the indorsement of Talking Book Corporation, besides others which will be referred to. Just before the maturity of the note (September 3, 1920), the plaintiff placed it in the bank for collection, and, as appears from indorsements, it passed through the Citizens' National Bank of New York, the Chemical National Bank of New York, and the Charleston Savings Bank. The last-named indorsement bears date August 30, 1920. By that bank, I assume, it was presented to the Bank of Tatum, where it was made payable, and payment refused. In addition to the indorsements above referred to, and appearing last upon the back of the note, was an indorsement by Isaac H. Blanchard Company; but whether as a matter of fact it was the last indorsement does not appear. The record does not show when it was placed there.

The plaintiff's president testified that he knew that the notes pledged as collateral security to the Blanchard Press, Inc., "all represented a cash payment of 33–1/3 per cent. on the stock purchased and for which they were given as part payment." He evidently intended to say that they represented the balance of the purchase price of stock, after a cash payment of one-third had been made; that this information was given to him by Mr. Stringer, the treasurer of

the Talking Book Corporation, before the transfer of the notes. He also testified that about August 1, 1920, the Talking Book Corporation owed the Blanchard Press, Inc., more than $10,000.00; that he had made demand after demand for payment; and that "the usual excuses one gives in a position of that kind" were given, "until we became surfeited with excuses"; that, when Stringer proposed to assign notes as collateral ("securities in the form of collateral notes in connection with the sale of stock of their company"), he, the president, insisted upon notes which were not at that time past due; that Stringer agreed, and sent down to his office notes of that description, aggregating $8,616.27. He also testified that the Talking Book Corporation had, prior to August, 1920 (a fact corroborated in the extract from the receipt copied above), assigned to the Blanchard Press, Inc., accounts for merchandise delivered, and had subsequently collected the money upon them without accounting therefor; that they had been guilty of "stealing our money."

It does not distinctly appear in the record when the alleged embezzlement came to the attention of the plaintiff, whether before or after the transfer of the note; nor when the action against the officers of the corporation was instituted by the plaintiff. The more plausible inference is that it came afterwards.

Now, coming to the assignments of error classified as above:

1. As to the admission of evidence: The appellant contends that its objection to the testimony of Mrs. Stanton, to the effect that the note was obtained by reason of fraudulent misrepresentations, should have been sustained, for the reason that there was no circumstance in the case which affected the position of the plaintiff as a holder in due course.

The rule is well established that, when it appears presumptively, by the possession of a note properly transferred by indorsement, the holder is one in due course, evidence

sustaining the defenses available to the maker as against the payee will not be received, in the absence of some evidence that the indorsee is not a holder in due course. *Farr-Barnes Co. v. St. George,* 112 S. E., 24; 128 S. C., 67, and cases cited. The evidence of such fact, however, may come from the indorsee as well as from the maker. In the case at bar the circumstances above detailed were amply sufficient to leave the question whether the plaintiff was a holder in due course to the jury, and thus render the evidence offered by the defendant admissible, subject to proper instruction from the Court. The president of the plaintiff company, knew that the note had been given for stock in the Talking Book Corporation; that it had not been delivered, and could not be until the note should be paid; that the proposed sale was by the corporation itself; not by a stockholder; and that the value of the stock was determinable by the condition of the corporation. He knew that the corporation was in desperate straits; that it owed his company more than $10,-000.00, and had no money or means of getting it. A very significant fact is that in demanding security he was particular to require notes which were not past due, knowing that as to others all defenses would be available to the makers. The conclusion is irresistible that he knew at the time that the stock, which was deliverable under the contracts from which the notes emanated, was as worthless as a German paper mark. At least, there was sufficient evidence of this fact to carry the case to the jury.

There seems to be no doubt under the authorities that, when the indorsee has notice that the note is directly connected with an executory contract, the time for the performance of which had passed at the time he acquired it, he will not lose his position as a holder in due course, unless he had knowledge at that time of the breach which may have occurred. See extended note to 40 L. R. A., 862.

At the same time it has been held, and justly, that, where the time has not passed, and the indorsee has notice of facts

which would convince a man of ordinary prudence that the breach is bound to occur at the time fixed for the performance of the contract, he does lose that position. See *Florence v. Bank* (Ga. App.), 129 S. E., 560.

In *Harris v. Nichols*, 26 Ga., 413, the Court holds (quoting syllabus):

"The plea of failure of consideration may be sustained against the transferee of a note, who takes it with a full knowledge of the contract, and that the consideration is liable to fail."

I do not think that under the circumstances of this case there can be a doubt that there was evidence sufficient to carry the case to the jury upon this point. It appears that the transactions between the plaintiff and the Talking Book Corporation practically ended on January 1, 1919, for the president testified that after that time they did some work for that corporation, but that "most of our business was trying to get money" out of them. From January 1, 1919, to August 6, 1920, they were being "surfeited with excuses," and that they were in the position of one who could not pay his debts. If they could not pay their debts, what could the stockholders expect?

2. As to the refusal to direct a verdict in favor of the plaintiff: The foregoing observations are conclusive as to the correctness of the presiding Judge's action.

3. As to errors assigned to the charge: The appellant contends that the presiding Judge committed error in charging the jury that, the contract being for the future delivery of stock, if it did not comply with the requirements of Sections 5165 to 5169, 3 Code of Laws 1922, it was an illegal and an unenforceable contract, and that a note given in attempted compliance therewith was void, even in the hands of a holder in due course. Section 5169 explicitly declares that a note given under the circumstances forbidden shall be "utterly void, frustrate and of none effect, to all intents and purposes whatsoever." The following authorities am-

ply sustain the ruling of the Court below: *Gaillard v. Le Roy,* 1 McMul., 225. *Tidmore v. Boyce,* 2 Mill Const., 200. *Payne v. Trezevant,* 2 Bay, 23; 3 R. C. L., 910, 1017. *Eskridge v. Thomas,* 91 S. E., 7; 79 W. Va., 322; L. R. A. 1918-C, 769; 8 C. J., 764, 768. *Planck v. Swift,* 174 N. W., 236; 187 Iowa, 293; 8 A. L. R., 309. *Levy v. Doerhoefer, Ex'r,* 222 S. W., 515; 188 Ky., 413; 11 A. L. R., 207.