ELKIN HENSON GRAIN CO. *v.* WHITE.

[98 So. 531.   No. 23767.]

(Division B.   Jan. 14, 1924.)

1. INTOXICATING LIQUORS. *Negotiable Instruments Law held not to to repeal law declaring void notes given for intoxicating liquors.*

   Chapter 244, Laws of 1916 (sections 2579 to 2774, inclusive, Hemingway's Code), known as the Negotiable Instruments Law, does not expressly or by necessary implication supersede or repeal section 2085, Hemingway's Code, declaring void all notes or other securities given for the purchase price of intoxicating liquors.

2. INTOXICATING LIQUORS. *Check given in payment of intoxicating liquor void; "securities."*

   A check given in payment for intoxicating liquors comes within the condemnation of section 2085, Hemingway's Code, which declares void all notes or other securities given for the purchase price of such liquors.

3. BILLS AND NOTES. *No recovery on instrument declared void by statute.*

   The general rule is that illegality of consideration is no defense to an instrument in the hands of a holder in due course, but to this rule there is the well-established exception that when a statute, expressly or by necessary implication, declares the instrument absolutely void, it acquires no validity by its transfer to

an innocent holder for value, and no recovery can be enforced thereon.

4. BILLS AND NOTES. *Negotiable paper given for the purchase price of intoxicating liquors void in the hands of innocent purchaser for value.*

    Negotiable paper, the consideration whereof is the purchase price of intoxicating liquors, is void in the hands of the holder, even though he took it for value and without notice of the character of the consideration.

APPEAL from circuit court, of Lauderdale county.

C. C. MILLER, Judge.

Suit in justice court by the Elkin Henson Grain Company against T. J. White and another. From a default judgment, defendant White appealed to the circuit court. From a directed verdict in that court, plaintiff appeals. Affirmed.

*W. C. Sams,* for appellant.

The record shows that the appellant was a holder in due course of check in question. Therefore, it took said check free from defenses available to prior parties among themselves, and had a right under the law to enforce payment of said check. The Negotiable Instruments Act is founded upon a broad principle of public policy to foster lawful businesses, enterprises, and institutions, including, of course, banking business, mercantile establishments, and commercial life and business in general.

The defendant relied, in the lower Court, on section 1743, Code 1906, as amended by Acts of 1908, chapter 115, and section 2085, Hemingway's Code. But this statute was superseded, certainly as to the appellant herein and all persons similarly situated, by the Negotiable Instruments Acts passed by the state legislature in 1916, and especially by sections 2603, 2604, and 2635 of Hemingway's Code. The evident purpose of the Negotiable Instruments Law, as enacted, was to get rid of all im-

pediments and hindrances to the circulation of negotiable instruments theretofore existing under former statutes, and to embody in said Negotiable Instruments Act the entire law touching such instruments. *Wirt* v. *Stubblefield,* 17 App. D. C. 283. *Goodman* v. *Sweatt,* 66 So. 535, was decided two years prior to the adoption of the Negotiable Instruments Law in Mississippi.

Merchants, bankers, manufacturers, in fact the entire commercial world, would be subjected to the inconvenience of stopping in their business to investigate and ascertain what the consideration of the check was. They would have to trace the check to its source to determine whether it was for a gaming debt, whisky, or for some other unlawful purpose. See the case of *First National Bank of Morristown, Penn.,* v. *C. W. Leeton and Brother,* 95 So. 445. Also *Higgbotham* v. *McGready,* 105 Am. St. Rep. 467, 468.

*F. V. Brahan,* for appellee.

The "Uniform Negotiable Instruments Act," in Laws of 1916, page 355, was intended, generally, to repeal our "Anti-Commercial Act" in the Code of 1906, section 4001, but section 197 of said law, on page 382, provides that "all laws and parts of laws inconsistent with this Act are hereby repealed." This section does not repeal all previous statutes and parts of statutes about bills, checks and notes, but only such as are "inconsistent" with the Act. This Act does not, therefore repeal section 1743 of the Laws of 1908, chapter 115, pages 116 to 119, entitled "Debt for Liquors Not Collectible."

This court has repeatedly held that it would not lend its aid to the enforcement of an illegal contract, and the reason given for its repeal is found in 73 So. 883. The contract at bar was an illegal one. *Goodman* v. *Sweatt,* 66 So. 535; *Cotton* v. *McKenzie,* 57 Miss. 418; *Whitehead et al.* v. *Coker,* 76 So. 484. Appellee should be protected

from executing an illegal contract which it would be against morals and public policy to enforce.

Cook, J., delivered the opinion of the court.

The appellant, Elkin Henson Grain Company, instituted this suit in a justice court against W. S. Whitehead, as payee and indorser, and against T. J. White as maker, of a certain check for the sum of fifty-five dollars, of which it had become the holder in due course, and which had been dishonored upon presentation for payment. There was a judgment by default against both defendants, and from this judgment T. J. White, the maker of the check, prosecuted an appeal to the circuit court. At the trial in the circuit court the plaintiff offered evidence to establish the fact that it had acquired the check from the payee thereof in due course of trade, and that it had no notice of any defect or infirmity in said check, and no knowledge of any defense of the maker thereof as against the payee and indorser. The defendant, T. J. White, testified that the check was given for the purchase of a quantity of whisky. This testimony was undisputed, and at the conclusion of all the testimony the court granted an instruction to the jury to return a verdict for the defendant, and, from this verdict and the judgment entered thereon, this appeal was prosecuted.

Section 2085, Hemingway's Code, provides that, "If any person shall trust or give credit to another for intoxicating liquor sold, he shall lose the debt, and be forever disabled from recovering the same or any part thereof; and all notes or securities given therefor, under whatever pretense, shall be void."

It is undisputed that the check here involved was given for the purchase price of whisky, and the only question to be determined is whether, in view of the provisions of the Negotiable Instruments Law, payment of such a check can be successfully defended by the maker thereof, when it is owned and held by an innocent purchaser for

value without notice of any infirmity in the instrument or defect in the title of the person negotiating it. As we understand the contention of the appellant it is, first, that a check given for the purchase price of whisky does not come within the provisions of section 2085, Hemingway's Code, and second, that this section of the Code has been superseded and repealed by the Negotiable Instruments Law (chapter 244, Laws of 1916).

The contention of appellant that the sale of the whisky was a cash sale, and consequently that the check given as a payment therefor is not rendered invalid by reason of the provisions of section 2085 of Hemingway's Code, cannot be maintained. This section provides that all notes or securities given for the purchase price of intoxicants, under whatever pretense, shall be void. Under the provisions of the Negotiable Instruments Law a check is simply a bill of exchange drawn on a bank payable on demand. Unfortunately a check is not always the equivalent of cash, and until it has been paid by the bank on which it is drawn it would come within the meaning of the term "securities given for the debt."

The next point for consideration is whether section 2085, Hemingway's Code, has been superseded or repealed by the Negotiable Instruments Law; and, if not, does the illegality of this check constitute a real defense under the Negotiable Instruments Law?

Section 55 of the Negotiable Instruments Law (section 2633, Hemingway's Code), provides:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud."

Section 52, Negotiable Instruments Law (section 2630, Hemingway's Code), provides that a holder in due course

is one who has taken an instrument, complete and regular on its face before it was overdue, in good faith and for value, without notice of its previous dishonor, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it.

Section 57 of the act (section 2635, Hemingway's Code), provides that "a holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." while section 197 of the act provides that, "all laws and parts of laws inconsistent with this act are hereby repealed."

The statute making all notes and securities given for the purchase price of intoxicating liquors void is founded upon what the legislature for many years deemed to be sound public policy, and we do not think it was the intention to legalize such debts by the passage of the Negotiable Instruments Act. In the passage of this act the legislature was dealing with the matter of the negotiability of paper which might be placed on the market and enforced in the courts, and it was never intended to inject life into written instruments that by law were null and void, and viewed in this light there is nothing in the provisions of this act so inconsistent with section 2085 of Hemingway's Code as to effect its repeal. This section is not repealed by the Negotiable Instruments Act expressly or by necessary implication. Repeals of statutes by implication are not favored, and the courts will not extend the doctrine of implied repeals further than the evident purpose of the later legislation requires, and the act here involved should be read in view of its purpose, and not as intending to repeal other statutes passed in the exercise of the police power of the state to suppress crime.

The general rule is that illegality of consideration is no defense to an instrument in the hands of a holder in

due course, but to this rule there is one well-established exception, and that is, when a statute, expressly or by necessary implication, declares the instrument absolutely void, it acquires no validity by its transfer to an innocent holder for value.

Mr. Daniel, in his work on Negotiable Instruments, Section 197, says:

"The *bona-fide* holder for value, who has received the paper in the usual course of business, is unaffected by the fact that it originated in an illegal consideration, without any distinction between cases of illegality founded in moral crime or turpitude, which are termed *mala in se,* and those founded in positive statutory prohibition which are termed *mala prohibita.* The law extends this peculiar protection to negotiable instruments, because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. There is, however, one exception to this rule: That, when a statute, expressly or by necessary implication, declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it."

This doctrine was also recognized and applied in the cases of *Saltmarsh* v. *Tuthill,* 13 Ala. 390; *Hanover National Bank* v. *Johnson,* 90 Ala. 552, 8 So. 42; *Ala. National Bank* v. *Parker & Co.,* 146 Ala. 516, 4 So. 987, and 153 Ala. 597, 45 So. 161; *Bluthenthal & Bickart* v. *City of Columbia,* 175 Ala. 402, 57 So. 814; *Whitehead* v. *Coker,* 16 Ala. App. 165, 76 So. 484.

In the case of *Sondheim* v. *Gilbert,* 117 Ind. 71, 18 N. E. 687, 5 L. R. A. 432, 10 Am. St. Rep. 23, the court said:

"In order, therefore, to uphold a judgment which invalidates commercial paper in the hands of innocent holders, such as plaintiffs are conceded to be, it is essential that a statute should be shown governing the case, which in direct terms declares that transactions such as those here involved are unlawful and that notes given

under the circumstances exhibited by the facts in this case are absolutely void.

"The principle may be considered as well established, that when a statute in express terms pronounces contracts, notes, bills, securities and the like, resulting from or growing out of wagering or gambling transactions, which are prohibited by statute, absolutely void, no recovery can be had thereon, and the doctrine that transactions which a statute in direct terms declares to be unlawful, cannot acquire validity by the transfer of commercial paper based thereon, which is also under direct legislative denunciation, is fully supported by authority. . . . In such a case the note will be declared void in the hands of an innocent holder, in pursuance of the peremptory words of a statute which embraces in its terms the contract or obligation under consideration. . . .

"The authorities justify the statement that a defendant may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the legislature that the illegality insisted upon shall make the security, whether contract, bill or note, void. But, unless the legislature has so declared, then, no matter how illegal or immoral the consideration may be, a commercial note in the hands of an innocent holder for, value will be held valid and enforceable."

In the case of *Farmers' & Drovers' Bank of Louisville* v. *Unser,* 13 Ky. Law Rep. 966, the court said: "The whole current of authority is that the obligor may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the legislature that such illegality makes the contract void."

See, also, the cases of *Alexander* v. *Hazelrigg,* 123 Ky. 677, 97 S. W. 353, 29 Ky. Law Rep. 1212; *Lawson* v. *First*

*Nat. Bank,* 102 S. W. 324, 31 Ky. Law Rep. 318; *Twentieth Street Bank* v. *Jacobs,* 74 W. Va. 525, 82 S. E. 320, Ann. Cas. 1917D, 695; and also Brannon's Negotiable Instruments Law, pp. 184-186, and authorities there cited.

There is authority for the view that illegality ceases to be a defense under the Negotiable Instruments Law unless made so by a subsequent statute, and that statutes previously in force declaring void instruments given for forbidden transactions are impliedly repealed thereby, but we think the doctrine that, when a statute, expressly or by necessary implication, declares the instrument absolutely void, the obligor may insist upon the illegality of the instrument, notwithstanding it has passed into the hands of an innocent holder for value, is the better rule, and is supported by the weight of authority.

The judgment of the court below was in accordance with the views herein expressed, and it will therefore be affirmed.

*Affirmed.*