## Whitaker et al. v. Smith

(Decided June 22, 1934.)

340

F. J EVERSOLE for appellants.

I. A. BOWLES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On January 21, 1924, the appellant and defendant below Laura Whitaker and her husband, C. C. Whitaker, executed to the Hargis Bank & Trust Company of Jackson, Ky., their promissory note agreeing to pay it one year thereafter the sum of $3,000, and which they secured by a mortgage on real estate situated in Perry county. The interest demanded and agreed upon was 10 per cent., and which rate was paid to the bank by the makers at each twelve months' renewal period of the note up to and including the last renewal in January, 1930, but it was to run for only a period of six months and upon which only $150 interest was demanded and collected in advance.

The appellee and plaintiff below, Emily Smith, was a depositor in the Hargis Bank & Trust Company. On February 5, 1930, her deposit was an amount substantially equal to the Whitaker note, and on that day she agreed to take the note in satisfaction of her deposit account, and which was the last day the bank remained open; it going into the hands of the state banking commissioner for liquidation who took charge of its affairs on the next day.

On September 13, 1930, plaintiff filed this equity action in the Perry circuit court against defendants to collect the note and to enforce the lien to secure it. The banking commissioner intervened in the suit and sought

certain relief based upon a charge of fraudulent assignment of the note to plaintiff by the bank and on which defendants in their answer also relied, and made it a cross-petition against both the bank and the banking commissioner, and joined with the latter in the prayer of his intervening petition.

The answer also pleaded the usury that had been paid by the defendants to the bank from the time of the inception of the indebtedness and sought credit therefor. The mortgaged property was insured against loss by fire, and while that policy was in force the insured property was destroyed, and there was due under the policy the sum of $1,309, which was adjudged to be paid to plaintiff, and judgment was rendered against defendants for the balance of the face of the note without allowing any credit for the usury paid, and, complaining of that denial, defendants prosecute this appeal. All other questions raised by the pleadings, as well as those urged by interveners, were disposed of, and from which no appeal has been prosecuted.

We thus see that the only questions for determination are: (1) Whether or not plaintiff, under the facts presented by the record, became and is the holder of the note in due course, and, if so, then (2), whether our negotiable instruments statute, being sections 3720b-1 to and including 3720b-195, of Carroll's Kentucky Statutes, 1930 Edition, protects her as such holder from the defense of usury made and relied on by defendants? In determining the latter question, it becomes necessary to consider the condition of the law as it has been declared in this jurisdiction with reference to contracts which are declared by statute to be "void." It will be perceived that the question as we have so propounded it does not embrace contracts which are void at common law, although in treating the obligatory effect of void contracts in the hands of innocent parties (including notes and obligations for the payment of money) most of the decisions and text-writers draw no distinction between a contract declared to be void by statute and one so declared by the common law. But, because we do not have the latter question in this case, we will confine our discussion to those contracts and instruments declared void by statute.

The almost universal rule regarding such contracts is that they are void and may not be enforced, not only

as between the original parties thereto, but likewise are they prohibited from enforcement by one who may become the holder of them in due course, and which is upon the ground that being void they never had any obligatory force and are no more binding upon the maker than if he had never executed them. The theory upon which that conclusion was reached is that the Legislature in so providing (i. e., that the particular contract should be void) did so in furtherance of what it conceived to be a wholesome public policy, and that to prevent that policy from being thwarted through the act of an assignment of the instrument (or contract) would put it into the hands of the parties to it to defeat such declared public policy. The latest text, embodying such court conclusions, will be found commencing on page 556 of Brannan's Negotiable Instruments Law (5th Ed.), and which is thus stated by the author: ''It has sometimes been held that illegality ceases to be a real defense under the N. I. L. unless made so by a subsequent statute, and that the statutes previously in force declaring void instruments for gaming or upon usurious interest or other forbidden transactions are impliedly repealed by the N. I. L. Wirt v. Stubblefield, 17 App. D. C. 283; McCardell v. Davis, 49 S. D. 554, 207 N. W. 662 [gaming; but see special sec. 16 in South Dakota, p. 12, supra N. 16]; Wood v. Babbitt [C. C.] 149 F. 818, 822 [usury] semble. The weight of authority however seems contra. Perry Savings Bank v. Fitzgerald, 167 Iowa, 446, 149 N. W. 497 [usury] semble; Plank v. Swift, 187 Iowa, 293, 174 N. W. 236, 8 A. L. R. 309; with note [gaming]; Alexander & Co. v. Hazelrigg, 123 Ky. 677, 97 S. W. 353, 29 Ky. Law Rep. 1212 [gaming]; Holzbog v. Bakrow, 156 Ky. 161, 160 S. W. 792, 50 L. R. A. [N. S.] 1023, semble; Lawson v. First Nat. Bank, 102 S. W. 324, 31 Ky. Law Rep. 318, holding that a statute making void a peddler's note unless indorsed with the words 'Peddler's note,' is not repealed by implication by the N. I. L; McAfee v. Mercer Nat. Bank, 104 S. W. 287, 31 Ky. Law Rep. 863, accord [cf. Arnd v. Sjoblom, 131 Wis, 642, 111 N. W. 666, 10 L. R. A. (N. S.) 842, 11 Ann. Cas. 1179]; Levy v. Doerhoefer's Ex'r, 188 Ky. 413, 222 S. W. 515, 11 A. L. R. 207 [gaming], noted in 30 Yale L. J. 191; Elkin Henson Grain Co. v. White, 134 Miss. 203, 98 So. 531 [note given for purchase of intoxicating liquor]; Fisher v. Brehm, 100 N. J. Law, 341, 126 A. 444, 37 A. L. R. 695, with note [gam-

ing]; Sabine v. Paine, 223 N. Y. 401, 119 N. E. 849, 5 A. L. R. 1444, affirming 166 App. Div. 9, 151 N. Y. S. 735 [usury], noted in 4 Corn. L. Q. 44; Kennedy v. Heyman, 183 App. Div. 421, 170 N. Y. S. 828; Crusins v. Siegman, 81 Misc. 367, 142 N. Y. S. 348 [usury]; Larschen v. Lantzes, 115 Misc. 616, 189 N. Y. S. 137 [gaming]; noted in 70 U. Pa. L. Rev. 52; Fleischer v. Wolf [Sup.] 191 N. Y. S. 691 [gaming]; but cf. Bernstein v. Fuerth, 132 Misc. 343, 229 N. Y. S. 791; 29 Colum. L. Rev. 223, not citing the N. I. L.; Martin v. Hess, 23 Pa. Dist. R. 195, 71 Leg. Int. 148 [gaming]; Hamilton-Turner Grocery Co. v. Hander [Tex. Civ. App.] 253 S. W. 833; Raleigh County Bank v. Poteet, 74 W. Va. 511, 82 S. E. 332, L. R. A. 1915B, 928, Ann. Cas. 1917D, 359 [stipulation for attorney's fees in note]; Twentieth Street Bank v. Jacobs, 74 W. Va. 525, 82 S. E. 320, Ann. Cas. 1917D, 695 [gaming]; Eskridge v. Thomas, 79 W. Va. 322, 91 S. E. 7, L. R. A. 1918C, 769 [usury]; In re Valecia Condensed Milk Co. [D. C.] 233 F. 173 [bonds made void by statute]; Williams v. Layes, 168 Ark. 675, 271 S. W. 11 [patent article], not citing the N. I. L.; Manufacturers' & Mechanics' Bank of Kansas City v. Twelfth Street Bank, 223 Mo. 191, 16 S. W. (2d) 104, 8 Tex. L. Rev. 313 [gaming]; Farmers' State Bank of Texhoma, Okl. v. Clayton Nat. Bank, 31 N. M. 344, 245 P. 543, 46 A. L. R. 952 [gaming]."

To the same effect is the text in 8 C. J. 768, sec. 1033, saying: "If the instrument or contract is declared 'void' by statute it cannot be enforced even by a bona fide holder, and this is so even in those states where the Negotiable Instruments Law has been enacted." In the same section the compiler points out that some of the courts, and perhaps a majority of them, declined to apply the rule to a bona fide holder of a negotiable instrument where the statute stamps the vice in the instrument as merely "illegal"; but even those courts apply the rule as so announced where the particular prohibitive matter in the statute is declared therein to render the contract void. On page 772 of the same volume further emphasizing the same rule, and especially as applicable in Kentucky, the text says: "Where the statute provides that the note shall be void if it does not contain such words it is held that the absence thereof precludes enforcement even by a bona fide holder, unless holders in due course are expressly excepted. And it is held in Kentucky that such a pro-

vision making the note void is not repealed by contradictory provisions of the Negotiable Instrument Law as to bona fide purchasers.''

The text in 3 R. C. L. 1020, sec. 228, clearly states that under a statute, making void a contract made contrary thereto, is void even in the hands of an innocent holder, and which rule is applicable to usurious contracts to the extent that the statute against usury makes them void. Part of that text, specifically applicable here, says: ''Under this statute [12 Anne, Ch. 16, relating ·to negotiable instruments] and the subsequent enactments that have been modeled thereon, it has generally been held that a note or bill is void for usury even in the hands of an innocent purchaser. This class of cases comes within the exception to the rule—that a bona fide purchaser may enforce a negotiable instrument although as between the original parties it is unenforceable because originating in an illegal transaction—which exists generally when a statute declares a contract void. The contract gathers no vitality by its circulation in respect to the parties executing it, but it and the instrument evidencing it are void in the hands of every holder.''

No text-writer contradicts or takes issue with the general rule as so stated, and it is indorsed and followed by a great majority of the courts to the extent that the modern negotiable instruments statutes (ours being the one hereinbefore referred to) do not have the effect of repealing such declared rule, and especially so where the statute declares the particular contract ''void.'' We have applied it from the beginning of the history of this court, and have expressly declared that our Negotiable Instruments Act did not operate to repeal the law as so declared before its enactment. One of the earliest cases in which we so concluded is Lawson v. First National Bank of Fulton, 102 S. W. 324, 325, 31 Ky. Law Rep. 318. The statute there involved was section 4223 of our present Statutes requiring all notes taken for certain enumerated considerations to be indorsed with the words ''Peddler's Note.'' The note sought to be collected in that case measured up to the requirements of the negotiable instruments statute to become negotiable paper under it, and was acquired by the plaintiff in that case (the bank) before its maturity. In denying the right of the bank to recover thereon, we said: ''Furthermore, the statute makes such notes

void. It is of a police nature, intended to prevent imposition and fraud. The negotiable instruments act does not repeal this statute *in terms* nor does it by necessary implication. It has never been the policy of the courts to extend the doctrine of implied repeals further than the evident purpose of the last legislation required. The negotiable instruments statute is a most comprehensive piece of legislation. It goes into minutest detail in dealing with the subjects embraced by it. The whole scope of it is shown to be the dealing with commercial paper, so as to protect innocent purchasers of such against mere defenses available as between the original parties. It gives such paper currency, free from original defenses. But it applies only to paper that might *have been obligatory* between the parties. But, where the parties were *never bound* because the law made the note *void,* as contrary to public policy as expressed in the statutes, the negotiable instruments act does not apply, and ought not to. The prevention of crime is of more importance than the fostering of commerce. The later act should be read in view of its purpose, and not as intending to repeal other statutes passed in the exercise of the police power of the state to suppress crime and fraud. Alexander v. Hazelrigg [123 Ky. 677] 97 S. W. 353, 29 Ky. Law Rep. 1214.'' (Our italics.)

The same conclusion was reached in the Alexander Case, 123 Ky. 677, 97 S. W. 353, 29 Ky. Law Rep. 1214, where the note in contest was given in consideration of what is commonly referred to as a ''gambling'' debt, which is inhibited by section 1955 of our present Statutes, and which says that all such contracts based upon the consideration therein named ''shall be void.'' This court held in that opinion, applying the rule hereinbefore stated, that our Negotiable Instruments Law ''does not authorize one holding in due course a note given for a gambling debt to enforce such note.'' The doctrine of that opinion was referred to and approved in the later case of Citizens' Bank v. Crittenden Record-Press, 150 Ky. 634, 150 S. W. 814. Perhaps the latest domestic case in which the principal question, as well as related ones, were discussed, is First National Bank of Hazard v. Combs, 237 Ky. 834, 36 S. W. (2d) 644. It is therein pointed out that, if the statute merely denounces the contract as ''illegal,'' the Negotiable Instruments Act would bar the defense as against an

innocent holder thereof in due course; but, if the statute went further and declared the effect of the denounced vice in the instrument to render it entirely or pro tanto "void," then the defense would be available against such innocent holder.

In arriving at the latter conclusion, the excerpt hereinbefore taken from volume 8, Corpus Juris, was quoted and approved, followed by a citation of the Lawson and the Alexander Cases, supra, as well as a number of others to be found in the Combs opinion. We will therefore not extend this opinion by a reference to further cases or texts, since the rule as so declared in our Combs and preceding opinions is the prevailing one throughout the country and is thoroughly established as the correct one in this jurisdiction.

Our statute denouncing the taking of usury is section 2219 of the 1930 edition of Carroll's Kentucky Statutes, and it says: "All contracts and assurances made, directly or indirectly, for the loan or forbearance of money, or other thing of value, at a greater rate than legal interest, shall be void for the excess over the legal interest." It will be noted that the statute says that "all contracts and assurances made, directly or indirectly, for the loan or forbearance of money," and which is leveled against the *transaction* and does not confine its denunciation to any writing that may be executed in evidence thereof. So that the defense is available in favor of the maker, notwithstanding the note evidencing the agreement may be fair on its face and to thereby submerge the vice in the transaction. However, we held in the case of Lear v. Yarnel, 3 A. K. Marsh. 419 (and which has never been departed from) that it was competent for the maker, even as against an innocent holder, to allege and prove the usurious character of the contract which his note evidenced, notwithstanding the latter was silent as to such defensive matter, since, if the usury appeared on the face of the instrument the holder would have notice thereof and would not be an innocent one so as to come within the provisions of the Negotiable Instruments Act.

The same was also held by us in the case of Early v. McCart, 2 Dana, 414, in an opinion written by Judge Robertson, in which he said that the defenses of fraud, deceit, and others not rendering the contract "void" were not available against an innocent holder in due

course; but he took the precaution to add: "A gaming, or usurious consideration, is an exception from the general rule, because, as each of them is declared by statute as sufficient to render the bill altogether void, either will be a good defence even against a bona fide endorsee for valuable consideration."

In the inserted text from the work of Mr. Brannan, supra, will be found a number of cases wherein the defense of usury was upheld as against a bona fide holder of the note who obtained it in due course, notwithstanding the sovereignty of the forum had adopted a negotiable instruments statute similar to ours. The defense has been more frequently applied where the denouncing statute makes the transaction entirely void on which a bona fide holder may not recover any part of the debt evidenced by the writing sued on, but some of them uphold the right of a pro tanto defense as against such holder the same as would be available against the original payee if he were plaintiff. Such latter conclusion is inescapable, since it would be false logic to hold that the entire note could be defeated in the hands of an innocent holder if a statute made the whole transaction out of which it grew invalid, but that a *portion* of the transaction which the statute denounced as void could not be relied on by the maker against a bona fide holder who obtained the instrument under conditions and circumstances that would render him a due course holder under section 3720b-52 of our negotiable instruments· statute.

We have seen that Judge Robertson in the Early Case excepts usurious considerations from the immunity extended to bona fide holders, and all of the other domestic cases to which we have referred (as well as others that may be found in those opinions) adopt the same conclusion and which is to the effect that the character of instrument referred to in section 3720b-52 in defining who is a holder of it in due course is a *valid* and not a *void* one. If, therefore, a bona fide holder of such an instrument is deprived of recovering any part of it when the consideration of it is declared to be void by the statute, notwithstanding the note evidencing the transaction is fair on its face, no other logical conclusion may be reached than the one that such a holder is not immune from a pro tanto or partial defense to the extent that the statute also declares the transaction void. The same exception disallowing such defenses to an

innocent holder when the entire contract is declared to be void necessarily prevails and is preserved to the maker where the instrument evidenecs a transaction or contract that the statute makes only partially void, and thereby giving to the maker only such pro tanto defense. Such conclusion necessarily results from the axiom that "the whole includes all of the parts."

The substance of our decisions, and which we now hold in this case as embodying the correct rule, is, that the law against usury is of long standing and originated in the execution of a public policy to suppress efforts of selfish lenders to prey upon the necessities of borrowers by exacting from them exorbitant rates of interest which they were compelled to agree to in order to meet pressing emergencies. It has always been regarded as a wholsome statute, and, being so, the courts hold that it will not be considered as repealed by implication through the enactment of a later statute, unless such intention to do so is plainly manifested in such later act, and especially so when the public policy statute renders the transaction denounced, or a specified part of it, as being void. Our negotiable instruments statute contains no language indicating an intention on the part of the Legislature to repeal our gaming statute, or the one denouncing usury, or the one relating to "peddler's notes," or any other one which renders the transaction dealt with "void," and our opinions supra so hold, and which we now approve.

But it may be argued that the conclusion we have reached is contrary to the spirit and purpose of the Legislature in enacting the negotiable instruments statute, and which was to facilitate dealing in commercial paper as therein defined and to thereby stimulate commerce, and, to allow the defense herein urged against an innocent holder of such instruments, acquired in due course, would hamper such purpose and intent, and it should therefore be held that the maker could not rely on such complete or pro tanto defense as against such holder. But that same argument was and is equally applicable to cases where the entire transaction is invalidated by the statute, although the note given in evidence of it is perfectly fair on its face. The same argument would also prevail where the note was forged, or was executed by one who was not sui juris and whose contracts were declared to be void by statute. In other words, that argument, if sound, would prevail against

all defenses whatever in actions brought by one who acquired the instrument under circumstances as to render him a holder thereof in due course under the statute. We have seen that the argument, though urged with equal force as it is in this case, was disallowed in the cases supra where the entire consideration was held to be void by the statute, and we again repeat that we can conceive of no logical reason why a different rule should be applied when, not the entire contract, but only a portion of it, is declared void, as is true in our usury statute.

To hold otherwise would virtually nullify its wholesome provisions against charging and collecting usury, since it would be a simple matter to transfer the last renewal of a usurious indebtedness to a third person, under circumstances that would make him a holder in due course and thus deprive the maker of the instrument of the remedy afforded him if the action had been brought by the original payee. The transferee, therefore, "is subject to the same defenses as if it were non-negotiable," one of which is the right to enforce a credit of all the usurious interest agreed to and which was paid on the indebtedness, upon the balance of it that is sought to be recovered, be they considered as payments, offsets, counterclaim, or what not.

We therefore conclude that the court erred in disallowing to defendants credit by the amount of usury paid on the note, although were it not for such defense plaintiff would be immune therefrom as a holder in due course; but which (question [1] supra) latter, under the evidence in the record, is extremely doubtful. However, we have assumed that fact to be true and have disposed of the appeal without deciding it.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to ascertain the usury the defendants have paid on the note from the creation of the debt, and to credit that amount on the unpaid balance of the note, and for other proceedings not inconsistent with this opinion. The whole court sitting; Dietzman, Ratliff, and Perry, JJ., dissenting.

Dietzman, Justice (dissenting).

In my judgment, the majority opinion does not touch, discuss, or expressly decide, the real issue in this case, for which reason it has arrived at an erroneous conclusion. I am therefore compelled to dissent.

At the outset, and for the sake of clearness, I desire to add to the statement of facts appearing in the majority opinion that the note here in question on its face bore but 6 per cent. interest; the alleged usurious interest being paid by virtue of an oral side agreement. The only issue which I think the case presents is how the payments heretofore made by the maker of the note here in question to the original payee are to be treated. My reading of the Kentucky authorities is that payments on an alleged usurious note are not regarded or treated in law as having been made by way of usurious interest until the principal of the debt and legal interest have been fully paid. Until that time all payments are first applied by the law, no matter how the parties treat them, on legal interest, and then on the principal, and it is not until the principal and legal interest have been discharged that usury begins. There is a long line of cases in this state establishing this principle, illustrated by the case of Crenshaw v. Crenshaw, 24 Ky. Law Rep. 600, 69 S. W. 711. In this very case before us, the maker of the note could not have recovered from the original payee of the note the alleged usury which the maker claims now to have paid. Had he attempted any such suit, we would at once have said that he was not entitled to recover it, although the statute specifically says that excess of interest may be recovered from the payee thereof. We would unhesitatingly have credited what he had paid first on the legal interest and then on the principal. Therefore we have here the situation that whatever payments the maker of the note has heretofore made are not to be treated as usury, but as payments on legal interest and principal, and there is no excess which the statute says is void until that principal and legal interest are discharged, a state of case not here present. We simply have presented a case of a note fair on its face, upon which payments have been made unknown to a transferee for value. Treating her as the majority opinion does as a holder in due course, I am of the opinion that the conclusion is inescapable that she takes free from the defense of such payments, for it is elementary that a holder in due course takes free from the defense of payment to the original payee. The working of the majority opinion simply comes to this: That what the maker of the note has paid to the original payee by way of so-called usurious interest is to be credited on the principal and legal interest of the

note now held by a holder in due course who took in ignorance of such payments. If that is not charging her with payments made, I am utterly unable to understand what it is. The majority opinion silently overrules the long-established doctrine in this state above noted. Something is said in the majority opinion about the policy back of these usury statutes. But it must also be remembered that the holder of this note is a bona fide purchaser; that by the majority opinion she must suffer due to a conscious act of the maker of this note in agreeing to so-called usury which he now charges against an innocent party who took the maker's note that appeared fair on its face. It is just as shocking to the conscience to have an innocent party thus suffer as it is to have the maker of this note subject to perhaps the oppressive tactics of an original Shylock payee. The present holder of the note is no Shylock, and her predicament has been brought about by the maker of the note executing it and putting it into circulation. Surely we ought not to hunt for expedients to relieve the maker of a note of his at least moral obligation not to harm an innocent person. I am authorized to state that Perry and Ratliff, JJ., concur in these views and this dissent.