## WOMEN'S CATHOLIC ORDER OF FORESTERS v. TRIGG COUNTY.

### No. 25.

District Court, W. D. Kentucky, Paducah Division.

April 15, 1941.

Rouse, Price & Adams, of Covington, Ky., for plaintiff.

Sidney S. McKinney and John T. King, both of Cadiz, Ky., and Waller & Threlkeld, of Paducah, Ky., for defendant.

MILLER, District Judge.

The plaintiff brought this action as the owner and holder of $25,000 worth of Trigg County Funding Bonds to recover of the defendant for past due interest coupons on all of the bonds and for past due

principal on some of the bonds which have matured. The bonds are dated September 1, 1928, and are due at different times between September 1st, 1933, and September 1st, 1952. It alleges that it purchased the bonds in due course for value on the market before maturity and without notice or knowledge of defect or claim of defect therein. The original answer makes denial in its first 23 paragraphs of the maturity and nonpayment of the bonds and coupons sued upon. In paragraph 24 of the original answer and by its amended answer the defendant alleges that the proceeds of said issue of bonds were used immediately to discharge outstanding warrants of Trigg County, Kentucky, issued for an indebtedness contracted in violation of Sections 157 and 158 of the Constitution of Kentucky, that said warrants were void, and that the funding bonds were at the time of their issuance illegal and void and imposed no liability upon Trigg County, the defendant. The plaintiff has moved to strike the original answer and the amended answer from the record and has also filed a motion for summary judgment supported by affidavits and exhibits.

Section 157 of the Kentucky Constitution provides in part as follows: "No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

Section 158 of the Constitution provides in substance that a county shall not be authorized to incur indebtedness exceeding specifically designated maximum percentages on the value of the taxable property therein, including existing indebtedness. The defendant contends that each warrant paid by the bonds in question represented an indebtedness included in an amount which exceeded the income and revenue provided for Trigg County for such year in which the expenditure was made, and the amount of income and revenue that could lawfully have been provided for Trigg County in such year, and that no election was ever held for the purpose of securing the assent of two-thirds of the voters of the county as required by Section 157. If the facts as alleged by the amended answer are shown to exist the bonds issued by the defendant, Trigg County, even in the hands of a holder in due course are void and can not be enforced. Payne v. City of Covington, 276 Ky. 380, 123 S.W.2d 1045, 122 A.L.R. 321; Whitaker v. Smith, 255 Ky. 339, 73 S.W.2d 1105, 95 A.L.R. 727. Plaintiff concedes this to be the general rule of law, but contends that the defendant is estopped from showing and proving such facts by reason of provisions set out in and made a part of each bond involved in this suit, reading as follows:

"This bond is one of a series of fifty (50) bonds, numbered consecutively from one to fifty (1 to 50) inclusive, of like tenor, denomination and effect but of different maturity, aggregating the sum of Fifty Thousand Dollars ($50,000), and is issued for the purpose of funding a like amount of indebtedness of Trigg County heretofore legally contracted by the said County for the construction, repair and maintenance of roads and bridges in the said County, and the repair and improvement of certain of the public buildings therein, and particularly pursuant with Sections 157, 158 and 159 of the Constitution of Kentucky and Sections 1857, 1858 and 1859 of Carroll's Kentucky Statutes of 1922, providing for the issuance of funding bonds of this character, and in accordance with the proceedings duly had by the Fiscal Court of Trigg County, Kentucky, for said purpose."

"It is hereby certified that all acts, conditions and things required by the Constitution and laws of the Commonwealth of Kentucky to exist, be done, to have happened or be performed precedent to and in the issuance of this bond, exist, have been done, have happened and have been performed in regular form, time and manner as required by law; and that the total indebtedness of the said Trigg County, Kentucky, including this bond and the series of which this is a part, does not exceed any limitation prescribed by the Constitution and the statutes of Kentucky; that due provision has been made for the levy and collection of a direct annual ad valorem tax on all the taxable property in the said Trigg County, sufficient to pay the interest on said bond as it accrues and

to provide a sinking fund to redeem the principal thereof at maturity; and that for the prompt payment of this bond, both principal and interest, the full faith, taxing power, credit and resources of the County of Trigg, Kentucky, are hereby irrevocably pledged."

The defendant contends that there is no specific or implied constitutional or statutory power for the fiscal court of Trigg County to certify any of the things that it did certify, or to determine any of the facts that it so certified; that the fiscal court has the power to issue and sell bonds but does not have the power to make any certification which will prevent their validity being questioned or determined; that there is a vast difference between the power to issue and sell a bond and to make a judicial determination of a fact that affects its validity, and that an illegal indebtedness is not rendered valid by funding it through a bond issue since a county under Section 157 of the Constitution is not authorized to assume such an illegal indebtedness. See Sections 144 and 162 of the Kentucky Constitution; Sections 1840 and 1649c-1 of the Kentucky Statutes; Gross v. Fiscal Court of Jefferson County, 225 Ky. 641, 9 S.W.2d 1006; Crick v. Rash, 190 Ky. 820, 229 S.W. 63; Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S.W. 2d 611.

█ The bonds were issued pursuant to the provisions of Sections 1857, 1858 and 1859 of the Kentucky Statutes, which specifically give the fiscal court the power and authority to issue such funding bonds. Sections 1834 and 1840 of the Kentucky Statutes lodge the corporate powers of the several counties of the State in their fiscal courts and gives to the fiscal courts the jurisdiction and power to regulate and control the fiscal affairs and property of the county. Accordingly, it would seem that there is basic power in the fiscal court to issue the bonds in question and to do those acts necessarily incidental to the accomplishment of that end. Woodmen of the World v. Rowan County, Kentucky, D.C. E.D.Ky., 23 F.Supp. 903. The general question is also fully discussed by the Supreme Court in the case of Gunnison County Commissioners v. Rollins & Sons, 173 U.S. 255, 19 S.Ct. 390, 43 L.Ed. 689. It would no doubt be true that the County would not be estopped from pleading invalidity, even against innocent holders, if the bonds were issued without constitution-

al or legislative sanction, or from pleading the invalidity of the statute authorizing the issuance of the bonds in question. But no such attack is made upon the statute in this case, nor is it claimed that there is any lack of general constitutional power. The defendant's position rests upon an alleged lack of power resulting from the absence of precedent facts which conditioned its exercise. The distinction of a defense based upon the total lack of power and one based merely upon the absence of precedent facts or conditions upon which the exercise of a conferred power depends is referred to and discussed in Women's Catholic Order of Foresters v. Carroll County, D.C.E.D.Ky., 34 F.Supp. 140. When this distinction is correctly recognized the question then resolves itself into a plain question of estoppel which has been ruled upon several times by the Circuit Court of Appeals in addition to the two decisions of separate judges in the two cases in the Eastern District of Kentucky above referred to. See Henderson County, Tenn. v. Sovereign Camp, W.O.W., 6 Cir., 12 F.2d 883; First Trust Company of St. Paul v. County Board of Education, 6 Cir., 78 F.2d 114; Royal Oak Drain District, etc. v. Keefe, 6 Cir., 87 F.2d 786; Pulaski County, Kentucky v. Eichstaedt, 6 Cir., 110 F.2d 79. In all of those cases the Court held that the County or taxing district which issued the bonds with a certificate similar to the one in the present case was estopped to deny the legality of the obligation.

█ The defendant refers to Section 1649c-1 of the Kentucky Statutes which was apparently not considered by the Circuit Court of Appeals in any of the four cases above cited. It provides "that no conduct, statement or representation by any officer or officers of any county, municipality, or taxing district in this Commonwealth, shall be received as evidence against or serve to estop such county, municipality or taxing district from contesting the legality of any tax or indebtedness authorized or created by such county, municipality or taxing district in excess of the constitutional or legal limits relating thereto." This statute was passed in 1934, many years after the issuance of the bonds sued on. Its effect was discussed in the opinion in Women's Catholic Order of Foresters v. Carroll County, D.C.E.D.Ky., supra, where it was held that it did not apply retroactively to rights acquired under contracts made before its enactment. We

agree with that ruling and reference is made to the authorities cited in that opinion in support of the ruling.

■■ Plaintiff's motion to strike should be sustained as to paragraph 24 of the defendant's answer, and to the amended answer. It is overruled as to paragraphs 1 through 23 of the original answer which contained denials of the allegations of the petition. It appears from a reading of the record as presently made up that the denials contained in the first 23 paragraphs of the original answer are essentially matters of form and do not raise any genuine issue of fact. If so, and if no further answer is to be made by the defendant the plaintiff's motion for a summary judgment should be sustained. However, no ruling is made upon such motion at the present time in order that the Court may be advised whether or not any amended answer is to be filed following the present ruling. This case will be called on the docket at the Paducah term of Court beginning April 21st, 1941, at which time further consideration will be given to plaintiff's motion for summary judgment.